RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0251p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

HENRY KALAMA; HERMAN COLLADO; ROY M. JACKSON; FERMIN AGUILAR; JOHN J. LYNAM; JUNEST P. PONSON; HARRY G. SHANNON; BILLIE JENKINS; LUIS CACERES; JEREMIAH TODD,

                *Plaintiffs-Appellants*,

    *v*.

MATSON NAVIGATION COMPANY, INC., et al.,

                *Defendants-Appellees*.

No. 16-3408

───────────────

Appeal from the United States District Court for the Northern District of Ohio - Asbestos.
No. 1:10-cv-0001—Dan Aaron Polster and David A. Katz, District Judges.

Argued: July 26, 2017

Decided and Filed: September 13, 2017[*]

Before: ROGERS, COOK, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Louis M. Bograd, MOTLEY RICE LLC, Washington, D.C., for Appellants. Harold W. Henderson, THOMPSON HINE, Cleveland, Ohio, for Appellees. **ON BRIEF:** Louis M. Bograd, MOTLEY RICE LLC, Washington, D.C., Timothy A. Swafford, Alan Kellman, John Cardello, THE JAQUES ADMIRALTY LAW FIRM, PC, Detroit, Michigan, for Appellants. Harold W. Henderson, THOMPSON HINE, Cleveland, Ohio, for Appellees.

      ROGERS, J., delivered the opinion of the court in which COOK and STRANCH, JJ., joined. STRANCH, J. (pg. 16), delivered a separate concurring opinion.

───────────────

[*]This decision was originally filed as an unpublished opinion on September 13, 2017. The court has now designated the opinion for full-text publication.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.   This case arose in the late 1980s, when merchant marine plaintiffs began filing asbestos-liability suits against ship-owner and manufacturER defendants in the Northern District of Ohio.   At that time, the N.D. of Ohio ruled that it lacked personal jurisdiction over many of the defendants and indicated that it would transfer the relevant cases to scattered venues with proper jurisdiction.   Eventually, the cases were consolidated into multidistrict litigation in the Eastern District of Pennsylvania.   The E.D. of Pennsylvania held again in 2013 that the N.D. of Ohio lacks personal jurisdiction over the relevant defendants and that those defendants had not waived or forfeited their personal-jurisdiction defense.   The E.D. of Pennsylvania accordingly dismissed thousands of parties.   Now, ten plaintiffs appeal the E.D. of Pennsylvania's decision as it relates to nineteen defendants.   The E.D. of Pennsylvania did not abuse its discretion when it decided that the nineteen defendant–appellees did not waive or forfeit their personal-jurisdiction defense in the ten plaintiff–appellants' suits.

I.

Numerous merchant marine plaintiffs began suing various ship-owners and asbestos manufacturers and suppliers in the late 1980s in the N.D. of Ohio for injuries related to asbestos exposure on commercial vessels.   *In re Asbestos Prods. Liab. Litig. (No. VI)* (*Bartel Opinion*), 965 F. Supp. 2d 612, 614–15 (E.D. Pa. 2013).   These plaintiffs became known as the maritime docket ("MARDOC") plaintiffs, and Judge Thomas Lambros presided over their cases in the N.D. of Ohio at that time.[1]   *Id.* at 615.   Among the earliest filings in the N.D. of Ohio were ship-owner defendants' motions to dismiss for lack of personal jurisdiction.

———————————

[1]Ten of those original MARDOC plaintiffs, represented by The Jaques Admiralty Law Firm, are the appellants in this appeal.   Throughout this opinion, "plaintiff–appellants" refers to this group of ten, while "MARDOC plaintiffs" refers to the broader group of merchant-marine plaintiffs who originally filed asbestos-liability lawsuits in the N.D. of Ohio.   Nineteen of the original ship-owner defendants, or their successors in interest, represented by Thompson Hine, are the appellees in this appeal.   "Defendant-appellees" refers to this group of nineteen, while "ship-owner defendants" refers to the larger group of entities that were originally sued in the N.D. of Ohio.

Judge Lambros held a hearing on these motions to dismiss on October 31, 1989, at which he ruled that a significant number of the defendants were not subject to personal jurisdiction in Ohio. It is undisputed that defendant–appellees are among the group of defendants who had no specific contacts with the state of Ohio and therefore were not subject to personal jurisdiction there under Judge Lambros's ruling. Instead of granting the defendants' motions to dismiss, however, Judge Lambros announced that the relevant cases should be transferred to a venue with proper jurisdiction. At a later hearing, on November 21, 1989, Judge Lambros indicated that, if a defendant did not wish to be transferred, it could "waive the in personam jurisdiction problem" by filing an answer with the court by January 5, 1990.

Judge Lambros formalized these rulings in two orders. Order No. 40, issued on November 22, 1989, incorporated the October 31 and November 21 rulings, instructed the MARDOC plaintiffs to "report the choice of forum as to those cases which are" subject to transfer for lack of personal jurisdiction, and stated that "[p]arties who, upon reconsideration of their motions to dismiss or transfer, wish to remain in this jurisdiction need only file answers to the complaints" by January 5, 1990. Order No. 41 followed on December 29, 1989. The order transferred numerous cases "as to defendant shipowners which were determined not to be subject to in personam jurisdiction" to various federal district courts with personal jurisdiction over those defendants. The order also states: "Shipowner defendants, not subject to this transfer order, shall file answers by January 5, 1990 in accordance with the Order issued at the November 21, 1989 MARDOC conference." Although Order No. 41 purported to transfer cases to scattered courts across the country, those transfers never actually occurred.

The ship-owner defendants did two things on December 29, 1989, in response to Judge Lambros's orders. First, they moved the N.D. of Ohio to certify Order No. 40 for immediate interlocutory review. Second, they filed two master answers, both of which expressly preserved the defendants' personal-jurisdiction defense. Master Answer No. 2, the more detailed of the two, reads:

> In response to defendants' motion to dismiss for lack of personal jurisdiction, the Court has issued MARDOC Order Nos. 40 and 41 which transfer the numerous cases against defendant to multiple jurisdictions, up to and including thirteen separate districts around the nation. Each defendant maintains

that the transfers are contrary to law. A motion to certify the order of transfer for interlocutory appeal has been filed on behalf of defendant, and in order to preserve the status quo pending appellate review of such order, defendant files its answer to the complaints as directed by MARDOC Order Nos. 40 and 41 under protest, so that said cases will not be transferred automatically pursuant to MARDOC Order No. 40 prior to completion of appellate review. By filing its answer, defendant specifically does not waive its defense of lack of personal jurisdiction or waive its objections to the propriety of the transfers.

The court never ruled on the defendants' motion to certify Order No. 40 for interlocutory appeal.

The MARDOC plaintiffs were also unhappy with Judge Lambros's decision to transfer their claims across the country and on February 13, 1990, filed a motion to transfer all defendants to a single forum. All ship-owner defendants represented by Thompson Hine vehemently opposed the motion to transfer in toto. Their brief in opposition states:

Several nonresident defendants, although not subject to the personal jurisdiction of this Court, nevertheless agreed to waive their personal jurisdiction defense as the quid pro quo to avoid the expense of litigating these cases in as many as 13 different jurisdictions simultaneously, and to take advantage of the consolidated handling available in this Court.

. . .

Furthermore, some nonresident defendants who are not subject to the personal jurisdiction of this Court elected to waive that valuable due process right and submit themselves to the Court's jurisdiction to take advantage of this Court's experience in the handling of mass tort litigation, the consolidated handling of cases available in this Court, and to avoid the inconvenience of litigating these cases simultaneously in 13 scattered jurisdictions. After having pressured those defendants into submitting to jurisdiction here, plaintiffs now seek to turn the tables on them and scatter the cases against them to the four winds on the basis that a court may transfer a case under Sec. 1404(a) where the court has jurisdiction over the defendant. The interests of justice do not favor such tactics.

Judge Lambros denied the motion to transfer in toto.

As the litigation continued in the N.D. of Ohio, a group of twenty cases was set to be tried together there. After four of the twenty had been tried, Judge Lambros held a hearing on January 8, 1991, to discuss the remaining sixteen. After deciding that a magistrate judge would oversee the remaining sixteen cases, Judge Lambros turned his attention at the hearing to two

groups of forty-four cases each, one assigned to Ohio and one assigned to Michigan.  In the ensuing discussion, a Thompson Hine attorney asserted:

> I had one point that I wanted to be sure that the Court understood; we did not agree or concede to trials of any of these cases in Detroit.  We had put our objection on the record before, but trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here in Cleveland.

One group of forty-four cases was eventually transferred to the Eastern District of Michigan.  Once there, the defendants who had been transferred argued for retransfer to the N.D. of Ohio, and petitioned the Sixth Circuit for a writ of mandamus to halt proceedings in the E.D. of Michigan.  Because the forty-four cases transferred to the E.D. of Michigan did not include any of plaintiff–appellants' cases, the statements made in opposition to the transfer in these filings have little relevance to this appeal.

Later in 1991, the Judicial Panel on Multidistrict Litigation (JPML) consolidated asbestos litigation from around the nation into MDL No. 875, located in the E.D. of Pennsylvania.  *Bartel Opinion*, 965 F. Supp. 2d at 615.  The ship-owner defendants represented by Thompson Hine in the MARDOC litigation in the N.D. of Ohio strongly opposed the consolidation and transfer.  They argued to the JPML that, because a litigation plan was already in place in the N.D. of Ohio, the cases should remain there.  The MARDOC cases were nevertheless transferred to the MDL court in the E.D. of Pennsylvania, where they were essentially inactive from 1996 to 2008, when they were reassigned to Judge Robreno and reactivated.  *See id*.

The next important step came in 2013, when the E.D. of Pennsylvania, through the "Bartel Opinion," 965 F. Supp. 2d 612, granted 418 defendants' motions to dismiss for lack of personal jurisdiction.  These motions to dismiss required the E.D. of Pennsylvania to decide whether the N.D. of Ohio—the transferor court that would eventually oversee trials in the MARDOC cases—could exercise personal jurisdiction over the ship-owner defendants.  While deciding the motions to dismiss, the MDL court first recognized, as the N.D. of Ohio had in 1989, that the N.D. of Ohio lacks personal jurisdiction over those defendants who did not maintain any specific contacts with Ohio.  *See id.* at 619–20.  The MDL court then rejected the

MARDOC plaintiffs' argument that the ship-owner defendants had waived their personal-jurisdiction defense by filing answers in the N.D. of Ohio, explaining:

> [I]t is apparent from the record that despite filing answers, defendants did not intend to waive the defense.  In addition to including standard language about the personal jurisdiction defense, the answers included prefaces that specifically stated that defendants were filing the answers "under protest" pending review by the Court of Appeals of Judge Lambros' decision to transfer rather than dismiss the cases.  In seeking to comply with Judge Lambros' orders, the defendants faced a Hobson's choice: they could either have agreed to a transfer of the cases to another jurisdiction (and thus lost the ability to assert cross-claims against manufacturer defendants), or they could have chosen to remain in the Northern District of Ohio and lost the defense of lack of personal jurisdiction.
>
> By filing answers which clearly identified the defense, while at the same time seeking interlocutory review of Judge Lambros' order, defendants preserved and did not waive the defense.

*Id.* at 621–22 (footnote omitted) (citations omitted).

The E.D. of Pennsylvania also denied the MARDOC plaintiffs' request to transfer the claims against the defendants over which there was no personal jurisdiction in Ohio to a venue with proper jurisdiction.  *Id.* at 622–23.  The court reasoned that, under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), an MDL transferee court may not transfer a case under 28 U.S.C. § 1404(a) to another district court.  *Bartel Opinion*, 965 F. Supp. 2d at 622.  The court further reasoned that, even if *Lexecon* allowed it to directly transfer the MARDOC plaintiffs' cases to another district, no good cause for such transfer existed.  *Id.* at 623.  The court explained:

> Plaintiffs continued filing thousands of cases in the Northern District of Ohio after Judge Lambros stated in 1989 that the court did not have personal jurisdiction over the defendants.  Being on notice that there was no personal jurisdiction over the defendants in the Northern District of Ohio, and having chosen to continue the litigation there, Plaintiffs cannot complain that it is now unjust for the motions to dismiss to be granted.

*Id.* (citation omitted).

The MDL court faced an additional 5,974 motions to dismiss in 2014 in the "Jacobs Opinion," *In re Asbestos Prods. Liab. Litig. (No. VI)* (*Jacobs Opinion*), MDL No. 875, 2014 WL

944227 (E.D. Pa. Mar. 11, 2014). While arguing against these motions to dismiss, the MARDOC plaintiffs relied on additional evidence that the ship-owner defendants had abandoned their personal-jurisdiction defense. None of the evidence persuaded the E.D. of Pennsylvania. First, the MDL court rejected the MARDOC plaintiffs' attempt to rely on Thompson Hine's response in opposition to the motion to transfer in toto from February 1990, reasoning that the response "is not evidence that any specific defendant waived the defense of lack of personal jurisdiction." *Id.* at *3, *5. The court held the same for Thompson Hine's opposition to consolidation into MDL No. 875, reasoning that the evidence "merely shows that defendants resisted the idea of being included in a federal asbestos MDL." *Id.* at *3–5. Furthermore, the court construed the statements made in opposition to transfer to the E.D. of Michigan at the January 8, 1991 hearing as relevant "only [to] those sixteen specific cases" being tried in the N.D. of Ohio at the time. *Id.* at *3, *5. Because those sixteen cases were not before the E.D. of Pennsylvania, the court disregarded the evidence. *See id.* at *5. Finally, the court did not accord any weight to an affidavit from Hartley Martyn, who served as Special Master for the N.D. of Ohio MARDOC litigation from 1988 to 1991 and recalled that the defendants represented by Thompson Hine wished to waive their personal-jurisdiction defense at that time. *See id.* at *4, *6. The court questioned whether Martyn's declaration was even admissible, then reasoned that it was unhelpful anyway, because it "fails to show that defendants affirmatively waived the defense." *Id.* at *6.

> The MDL court summed up its reasoning:
>
> Viewed together, the Court is not persuaded that these exhibits show by a preponderance of the evidence a universal waiver by all defendants, in all cases, in perpetuity. What the snippets from briefs and letters reflect, at best, is that some defendants in these cases either considered or would have been willing to accept a court order keeping their individual case in the Northern District of Ohio (as opposed to being transferred to various districts) in return for waiving the defense of personal jurisdiction.

*Id.* at *5 (footnote omitted).

In two orders from March 11 and April 14, 2014, the E.D. of Pennsylvania granted thousands of motions to dismiss based on the Bartel and Jacobs Opinions. Each of the defendant–appellees was dismissed from plaintiff–appellants' cases through these orders. At

some point later in 2014 or early in 2015, the MDL court recommended that each of the plaintiff–appellants' cases be remanded back to the N.D. of Ohio, and the JPML remanded the cases accordingly. In most cases, only one defendant, John Crane Inc., remained by the time the JPML remanded to the N.D. of Ohio, although several plaintiff–appellants retained claims against Chesterton Co., Gatke Corp., and General Refractories—none of which are parties to this appeal. After remand, the N.D. of Ohio completely disposed of plaintiff–appellants' cases by dismissing these remaining defendants on March 15, 2016. Plaintiff–appellants timely appealed from the March 15, 2016 final judgment as well as from the E.D. of Pennsylvania's orders dismissing defendant–appellees for lack of personal jurisdiction.

II.

A.

As a preliminary matter, we have appellate jurisdiction to review the E.D. of Pennsylvania's orders. Although both parties argue that appellate jurisdiction is proper, the court has an independent obligation to examine its own jurisdiction. *Hitchcock v. Cumberland Univ. 403(B) DC Plan*, 851 F.3d 552, 557 (6th Cir. 2017). 28 U.S.C. § 1294(1) provides for appellate jurisdiction over "appeals from reviewable decisions" of a U.S. district court in the "court of appeals for the circuit embracing the district." Pursuant to § 1294(1), we are usually asked to review judgments arising entirely out of a district court within the Sixth Circuit's territorial jurisdiction. This case presents an odd scenario, which asks us to review non-final orders issued by the MDL transferee court in the E.D. of Pennsylvania, outside the Sixth Circuit's territorial jurisdiction. Because the MDL court's orders became reviewable only after plaintiff–appellants' cases reached a final judgment in the N.D. of Ohio, however, we have appellate jurisdiction over the orders.

*EEOC v. Northwest Airlines, Inc.*, 188 F.3d 695 (6th Cir. 1999), compels this conclusion. In that case, the underlying lawsuit originated in the E.D. of Michigan. The E.D. of Michigan transferred the case for the parties' convenience under 28 U.S.C. § 1404(a) to the District of Minnesota, which then granted summary judgment to the defendants on several claims. The District of Minnesota next transferred the case back to the E.D. of Michigan, again under

§ 1404(a), and the E.D. of Michigan granted summary judgment to the defendants on the remaining claims.  The plaintiff appealed both summary-judgment orders to the Sixth Circuit.  In response to the defendants' argument that the appeal of the District of Minnesota's order was untimely, we noted that the order did not become appealable until after the case had been retransferred to the E.D. of Michigan and that court had entered a final judgment.  *See Nw. Airlines*, 188 F.3d at 700.  We then held that we had appellate jurisdiction over the District of Minnesota's order: "We thus find ourselves in the position of reviewing a final judgment partially disposed of in a district court of another circuit.  Although unusual, this case is properly before us." *Id.*

This case's procedural posture closely resembles that in *Northwest Airlines*.  Plaintiff–appellants ask us to review a partial dismissal issued by a district court outside of the Sixth Circuit.  Partial dismissals are not appealable final decisions under 28 U.S.C. § 1291 and ordinarily become reviewable only after an action reaches a final judgment.  *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013).  Thus, the E.D. of Pennsylvania's partial dismissals became appealable only after the N.D. of Ohio, a district court within the Sixth Circuit's territorial jurisdiction, issued its final judgment on March 15, 2016.  As we exercised jurisdiction to review a final judgment from the E.D. of Michigan that had been "partially disposed of" elsewhere in *Northwest Airlines*, we may now exercise appellate jurisdiction over the N.D. of Ohio's final judgment, which was partially disposed of in the E.D. of Pennsylvania.

This result also accords with § 1294, which limits our appellate jurisdiction to "reviewable decisions" of the district courts within our territorial jurisdiction.  A partial dismissal is not "reviewable" until it can be appealed—generally, when it "merges" into a final, appealable judgment.[2]  *See Hill v. Henderson*, 195 F.3d 671, 675–76 (D.C. Cir. 1999); *see also Jones v. InfoCure Corp.*, 310 F.3d 529, 534 (7th Cir. 2002).  Here, the E.D. of Pennsylvania's orders became appealable, and therefore "reviewable decisions," only through the N.D. of Ohio's final

---

[2]Alternatively, a district court may enter a final judgment as to some, but not all, of the parties or claims in an action under Federal Rule of Civil Procedure 54(b), or certify a partial dismissal for an immediate interlocutory appeal under 28 U.S.C. § 1292(b).

judgment. Because that final judgment arose within our territorial jurisdiction, § 1294(1) required plaintiff–appellants to appeal to the Sixth Circuit.

B.

On the merits, the MDL court did not abuse its discretion when it decided that the Thompson Hine defendants, including defendant–appellees, did not waive or forfeit their personal-jurisdiction defense. Under the unusual circumstances of this case, the court reasonably concluded that the MARDOC plaintiffs failed to prove waiver or forfeiture, either through the ship-owner defendants' filing answers in response to Judge Lambros's directives, or through their conduct later in the litigation.

First, the MDL court correctly decided that the act of filing answers, alone, did not constitute waiver. Once Judge Lambros denied the ship-owner defendants' motions to dismiss for lack of personal jurisdiction and elected to transfer the cases instead, he instructed those defendants who wished to "waive the in personam jurisdiction problem" to file answers by January 5, 1990. Plaintiff–appellants frame Judge Lambros's order as an ultimatum—waive personal jurisdiction in the N.D. of Ohio by filing answers there, or be transferred out—and argue that the only logical inference when the ship-owner defendants filed answers in response is that the defendants were consenting to personal jurisdiction. However, the defendants' express objection to personal jurisdiction in the N.D. of Ohio in their master answers, along with the motion requesting leave to immediately appeal Judge Lambros's transfer order, negates that inference. The ship-owner defendants' intent could not have been clearer from their assertion in Master Answer No. 2 that they were filing answers "under protest" to "preserve the status quo" while they continued to seek dismissal through an immediate appeal of Orders 40 and 41. Because the Federal Rules of Civil Procedure do not authorize a district court to strip a defendant of its right to assert an affirmative defense in an answer, it was not an abuse of discretion to determine that the ship-owner defendants could seek to preserve their personal-jurisdiction defense at that time.

Furthermore, even assuming that Judge Lambros considered defendant–appellees' personal-jurisdiction defense waived—given that he moved forward with the MARDOC

litigation and ignored the defendants' motion to certify Orders 40 and 41 for interlocutory review—it was not an abuse of discretion for the district court to nevertheless reach the opposite conclusion. Perhaps the record supports an inference that the parties considered the defendants' personal-jurisdiction defense waived once the defendants filed answers, but that is not the only reasonable inference. Given the strength of the ship-owner defendants' statements in their answers that they did not intend to forgo their personal-jurisdiction defense, and in light of the full record at that juncture, it was within the MDL court's discretion to take the answers at face value and reject plaintiff–appellants' waiver argument.

Second, the MDL court did not abuse its discretion when it determined that the MARDOC plaintiffs' proffered supplemental evidence does not prove the ship-owner defendants forfeited their personal-jurisdiction defense. Such forfeiture occurs when a defendant's "submissions, appearances and filings [give] '[p]laintiff a reasonable expectation that [the defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.'" *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)).

To start, the ship-owner defendants' objections against transfer of a group of forty-four cases to the E.D. of Michigan—raised before Judge Lambros at the January 8, 1991 hearing, in a motion for retransfer, and in a petition to the Sixth Circuit for a writ of mandamus—cannot prove forfeiture, because the forty-four transferred cases did not include plaintiff–appellants' cases. While the cases that were transferred to the E.D. of Michigan did include several of the named defendant–appellees, it was only in their capacity as defendants in lawsuits brought by MARDOC plaintiffs that are not party to this appeal. On this record, it would be improper to impute statements about waiver of personal jurisdiction made on behalf of a defendant in one lawsuit to the same defendant in a separate suit. Thus, this evidence does not govern whether the defendants in this appeal forfeited their personal-jurisdiction defense.

Moreover, the fact that the Third Circuit relied on this evidence in *In re Asbestos Products Liability Litigation (No. VI)*, 661 F. App'x 173 (3d Cir. 2016), to overturn the MDL court's decision to grant several ship-owner defendants' motions to dismiss is unpersuasive,

because unlike here, the Third Circuit's review involved cases that were actually transferred to the E.D. of Michigan. Three MARDOC plaintiffs, Wilson, Braun, and Guiden, appealed the MDL court's dismissal of their claims against two ship-owner defendants, Matson Navigation Co. and American President Line, to the Third Circuit. *Id.* at 174. The Third Circuit's reasoning in holding that the MDL court abused its discretion when it granted these defendants' motions to dismiss was specific to the particular actions being appealed; the Third Circuit noted that the ship-owner defendants before it "consented at [the January 8, 1991] hearing to proceed with 'these cases' in the Northern District of Ohio, and that phrase clearly refers to the clusters that Chief Judge Lambros intended to transfer to the Eastern District of Michigan, which included the lawsuits brought by Wilson, Braun, and Guiden." *Id.* at 177. The court later cabined its holding again by stating, "it was incorrect to dismiss *the cases before us.*" *Id.* at 179 (emphasis added). The Third Circuit neither relied on any evidence aside from the relevant ship-owner defendants' objections to transfer to the E.D. of Michigan nor ruled on the forfeiture issue aside from Matson's and American's waiver in Wilson's, Braun's, and Guiden's lawsuits. Thus, the Third Circuit's opinion has no relevance to this appeal.[3]

The MDL court also did not abuse its discretion by finding an insufficient showing of forfeiture in the remaining proffered evidence, including the Martyn affidavit and Thompson Hine's statements in opposition to transfer in toto and in opposition to consolidation into MDL No. 875. Under both Third Circuit and Sixth Circuit law, the burden was on the MARDOC plaintiffs to convince the MDL court that personal jurisdiction exists over the ship-owner defendants in the N.D. of Ohio. *See Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 167 (3d Cir. 2012); *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th

---

[3]The Third Circuit correctly determined that the MDL court clearly erred when it found that the objection to transfer out of the N.D. of Ohio from the January 8, 1991, hearing pertains only to sixteen cases that were not before the MDL court in 2014. *See In re Asbestos Prods. Liab. Litig.*, 661 F. App'x at 177–78 (the Third Circuit's reasoning); *Jacobs Opinion*, 2014 WL 944227, at *5 (the MDL court's reasoning). Reading the hearing transcript as a whole, it is clear that the objection arose after Judge Lambros had switched the topic of conversation from the sixteen cases set for trial in the N.D. of Ohio to the group of cases destined for the E.D. of Michigan. 01/08/1991 Tr., Appellant App. 1 at 1029–1117 (PDF 1039–1127). Furthermore, it would not make sense for the defendants to object to a "transfer" of the sixteen cases set for trial in the N.D. of Ohio, because Judge Lambros was not considering transferring those cases. However, because the forty-four cases set for transfer to the E.D. of Michigan did not include any of the cases currently before us, the MDL court's error nevertheless does not render its decision an abuse of discretion as to the ten plaintiff–appellants' cases.

Cir. 2017). While the remaining evidence could reasonably support an inference that some ship-owner defendants represented by Thompson Hine, at some point, consented to personal jurisdiction in the N.D. of Ohio to avoid transfer to scattered venues, the evidence is too vague to render forfeiture the only reasonable conclusion. Faced with thousands of motions to dismiss for lack of personal jurisdiction, the MDL court was justifiably skeptical that statements about "several nonresident defendants" having waived their personal-jurisdiction defense, and general opposition to consolidation into multidistrict litigation, could prove that each of the ship-owner defendants forfeited its defense. On this record and absent concrete evidence that any specific ship-owner defendant had abandoned its personal-jurisdiction defense, it was not a clear error of judgment for the MDL court to reject the MARDOC plaintiffs' forfeiture argument.

C.

Furthermore, the MDL court did not violate the law-of-the-case doctrine by granting defendant–appellees' motions to dismiss for lack of personal jurisdiction, because the court's decision did not diverge from Judge Lambros's prior ruling. Although the parties dispute whether Judge Lambros "granted" or "denied" the ship-owner defendants' motions to dismiss in 1989, how Judge Lambros technically disposed of the motions is irrelevant, because the issues he decided at that time are clear. First, Judge Lambros ruled that the N.D. of Ohio lacked personal jurisdiction over those ship-owner defendants who had no specific contacts with Ohio. Second, he ruled that the cases involving defendants over which the N.D. of Ohio had no personal jurisdiction should be transferred rather than dismissed. The law-of-the-case doctrine "comes into play only with respect to issues previously determined." *Holloway v. Brush*, 220 F.3d 767, 777 (6th Cir. 2000) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 (1979)). Thus, the MDL court's decision implicates the doctrine only if it contradicted either issue previously decided by Judge Lambros, and it did not.

The MDL court agreed that the N.D. of Ohio lacks personal jurisdiction over those ship-owner defendants without specific contacts to the state. *See Bartel Opinion*, 965 F. Supp. 2d at 620. Furthermore, the MDL court did not revisit Judge Lambros's initial decision to transfer the relevant cases out of the N.D. of Ohio. Finally, the remaining issues before the MDL court— whether the ship-owner defendants waived their personal-jurisdiction defense and whether

*Lexecon* permits an MDL transferee court to directly transfer a case to another district—had not been decided previously in the MARDOC litigation. Based on the entirety of the record, the law-of-the-case doctrine does not prohibit the MDL court from granting defendant–appellees' motions to dismiss for lack of personal jurisdiction.

D.

Finally, the MDL court did not err by dismissing, rather than transferring, the defendants over which the N.D. of Ohio lacks personal jurisdiction. Under *Lexecon*, the MDL court had no power to directly transfer plaintiff–appellants' cases to a venue with personal jurisdiction over defendant–appellees. In *Lexecon*, an MDL transferee court used 28 U.S.C. § 1404(a), which allows a district court, "[f]or the convenience of parties and witnesses, [and] in the interest of justice," to transfer "any civil action to any other district or division where it might have been brought," to transfer an MDL case to itself for trial. The Supreme Court held that such "self-transfer" was improper. *Lexecon*, 523 U.S. at 40. The Court relied on 28 U.S.C. § 1407(a), which requires that each transferred MDL action "be remanded by the [JPML] at or before the conclusion of . . . pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." This provision leaves two options for an MDL transferee court at the close of pretrial proceedings: terminate the case or allow the JPML to remand the case to the originating, transferor court. *See id.* at 34–37. To allow the transferee court to transfer a case to itself for trial under § 1404(a) would "conclusively thwart[] the Panel's capacity to obey the unconditional command of § 1407(a)" to remand cases at the close of pretrial proceedings. *Id.* at 36.

The Court's reasoning in *Lexecon* is not limited to self-transfer under § 1404(a). The Court specifically stated that its reasoning applies to *any* § 1404(a) transfer: "[W]e find that the statutory language of § 1407 precludes a transferee court from granting any § 1404(a) motion . . . ." *Id.* at 41 n.4. That § 1407 prohibits an MDL transferee court from directly transferring an action to another district court makes sense, because any direct transfer would thwart the JPML's ability to remand to the originating court at the end of pretrial proceedings. Thus, the E.D. of Pennsylvania correctly held that it had no authority to transfer plaintiff–appellants' claims to a district with proper jurisdiction.

Furthermore, the MDL court did not abuse its discretion by refusing plaintiff–appellants' proposed alternative of requesting the JPML to remand to the N.D. of Ohio with instructions for the N.D. of Ohio to transfer the cases to an appropriate venue. This approach is allowed but not mandated under *Lexecon. See id.* at 39. The MDL court correctly reasoned that yet another transfer after nearly thirty years of litigation would not serve the interest of justice, and there is no guarantee that, had the court recommended remand and subsequent transfer, the JPML would have adopted the recommendation.

Finally, the MDL court appropriately dismissed defendant–appellees after deciding that the N.D. of Ohio could not exercise personal jurisdiction over them. Plaintiff–appellants make a strange argument that § 1407(a) and *Lexecon* compelled the MDL court to recommend to the JPML that the defendants' cases be remanded to the N.D. of Ohio. Under plaintiff–appellants' argument: § 1407(a) requires remand unless an action was "previously terminated"; "previously terminated" means "previously terminated on the merits"; and dismissal for lack of personal jurisdiction is not "on the merits." Thus, according to plaintiff–appellants, once the MDL court dismissed the relevant defendants for lack of personal jurisdiction, the MARDOC plaintiffs' claims against those defendants were not "terminated," and the JPML was still required to remand claims against those particular defendants to the N.D. of Ohio. Following this logic would defeat the purpose of consolidated MDL litigation, which is for the MDL transferee court to weed out improper parties and claims before trial, including dismissing parties over which the transferor court could not exercise personal jurisdiction. That is what the E.D. of Pennsylvania did here, and neither § 1407 nor *Lexecon* demands a different result.

III.

The judgment of the district court is affirmed.[4]

---

[4] Because the MDL court's orders dismissing defendant–appellees for a lack of personal jurisdiction stand, we need not address defendant–appellees' motion to dismiss this appeal as barred by res judicata.

––––––––––––––

**CONCURRENCE**

––––––––––––––

JANE B. STRANCH, Circuit Judge, concurring.  I write separately to note that though this case is part of a very large MDL group of cases, its result hinges on the unique circumstances surrounding the claims of ten individual plaintiffs against nineteen specific defendants.  I concur because our result is based on the particulars of these cases and because the opinion accords with the understanding—and actual practice in this MDL—that § 1407 permits a transferee court to remand a case to the transferor court with a recommendation to send the case to an appropriate venue.  *See, e.g.*, *Musselman v. Amphenol Corp.*, No. 10-cv-69486, 2011 WL 6415165, at *1 (E.D. Pa. Nov. 2, 2011) (remanding a MDL No. 875 case to the Delaware transferor court with a suggestion to transfer the case to Arkansas).  Although the MDL court declined to elect that path for these ten plaintiff-appellants, other plaintiffs, including those participating in MDL No. 875, may still request that relief.

Also, although these ten plaintiff-appellants were unable to present specific evidence that the nineteen defendant-appellees waived personal jurisdiction in their individual cases, today's opinion confirms that other plaintiffs may prove waiver.  *See supra* p. 14, note 3 (discussing *In re: Asbestos Prods. Liab. Litig.*, 661 F. App'x 173 (3d Cir. 2016)).  The opinion notes that the Third Circuit "correctly" reversed dismissal because the January 1991 statements made by counsel for two of the defendant-appellees confirmed that they had consented to proceeding in the N.D. of Ohio for the purposes of a cluster of twenty cases.  Where such evidence of waiver exists, dismissal remains inappropriate.