FISHER, Circuit Judge, dissenting.
Like buried treasure, the Appellant merchant mariners ask us to dig up court transcripts and interpret the meaning of off-the-cuff dialogue between counsel and the court that occurred more than three decades ago. However, the MDL Court already accomplished this task, and it did so according to the appropriate legal standards and within the bounds of reasonable factual interpretation. Because the record demonstrates that the MDL Court did not abuse its discretion in concluding that the shipowners preserved their personal jurisdiction defense, I would affirm.
I
After determining that the Northern District of Ohio did not have personal jurisdiction over certain defendants, Judge Lambros allowed defense counsel thirty days to consult with their clients regarding whether they would prefer to consent to jurisdiction in Ohio, or have their matter transferred to a court with jurisdiction.
At the hearing that followed, Special Master Martyn, who managed MARDOC, stated that the court would "assume transfer" if defendants' responses were not received by December 1, 1989. App. at 331. Special Master Martyn ordered that, if a party wished to waive jurisdiction, it must so "apprise the Court no later than Friday, December 1st, in writing." App. at 332. Later in the hearing, he reiterated that any defendant wishing to waive jurisdiction must affirmatively do so in writing.
When Judge Lambros arrived at the hearing, defense counsel raised concerns about deciding whether to waive jurisdiction without additional information, such as the specific transferee courts and whether the cases would be consolidated. The court acknowledged defendants' interest in answers to these questions, but noted that it could not yet make a ruling. The judge then proposed that "the disclosure date [be] the same date as the answer date, but if the position is that they are not leaving, they have to have their answers in on [January 5, 1990]." App. at 401-02. In response, a representative of defense counsel stated that he "saw no problem with that." App. at 402. To clarify Judge Lambros' position, Special Master Martyn asked, "[S]o they will answer if they want to stay[?] ... And we will pull their name off the [transfer] list." App. at 405. Judge Lambros confirmed.
The next day, the court issued MARDOC Order No. 40, which required the merchant mariners to list the forum to which each case should be transferred and noted that "[p]arties who, upon reconsideration *111 of their motions to dismiss or transfer, wish to remain in this jurisdiction need only file answers to the complaints." App. at 416. One week before the deadline to file answers, Judge Lambros issued MARDOC Order No. 41, which identified the defendants and cases not in the court's jurisdiction and identified the jurisdictions to which the cases would be transferred.
The shipowners, who were named in MARDOC Order No. 41 and all represented by the same firm, filed answers on January 5. In Master Answer No. 1, they stated as an affirmative defense that "[t]he Court lacks personal jurisdiction due to insufficient contacts ...." App. at 1131. Master Answer No. 2 began with a preliminary statement specifically asserting that, by filing the answer, defendants were not waiving their personal jurisdiction defense:
In response to defendants' motion to dismiss for lack of personal jurisdiction, the Court has issued MARDOC Order Nos. 40 and 41 which transfer the numerous cases against defendant to multiple jurisdictions, up to and including thirteen separate districts around the nation. Each defendant maintains that the transfers are contrary to law. A motion to certify the order of transfer for interlocutory appeal has been filed on behalf of defendant, and in order to preserve the status quo pending appellate review of such order, defendant files its answer to the complaints as directed by MARDOC Order Nos. 40 and 41 under protest, so that said cases will not be transferred automatically pursuant to MARDOC Order No. 40 prior to completion of appellate review. By filing its answer, defendant specifically does not waive its defense of lack of personal jurisdiction or waive its objections to the propriety of the transfers.
App. at 1133-34.
Over the next year, the court's only actions pertained to transferring cases. For instance, because MARDOC Order No. 41 would transfer the cases all over the United States and splinter cases across jurisdictions due to the numerous defendants in each action, the merchant mariners filed a motion to transfer in toto . Defendants, including the shipowners, objected, however, stating in part that:
Several nonresident defendants, although not subject to the personal jurisdiction of this Court, nevertheless agreed to waive their personal jurisdiction defense as the quid pro quo to avoid the expense of litigating these cases in as many as 13 different jurisdictions simultaneously, and to take advantage of the consolidated handling available in [the Northern District of Ohio].
App. at 474-75.
Though defendants' opposition noted that "several nonresident defendants" purposefully waived their personal jurisdiction defense, it did not identify who those defendants were. On appeal, the shipowners maintain that these statements "refer[ ] solely to nonresident defendants who were not clients of Thompson Hine and Flory, and are not Appellees here." Appellees' Br. at 17 (emphasis in original). Instead, they explain that these statements refer to defendants represented by other firms who informed the court that they would "just as soon be [in Ohio] as anywhere," filed motions consenting to the court's jurisdiction, and withdrew their motions to dismiss or transfer. Id. at 17-18.
The court ultimately denied the merchant mariners' Motion to Transfer in Toto . However, Judge Lambros never ruled on defendants' motion to certify interlocutory appeal of Order No. 41, nor did he transfer any cases pursuant to that Order, including those in which the defendants did not file answers. Instead, in January *112 of 1991, the court transferred forty-four cases, not including the shipowners' cases at issue here, to the Eastern District of Michigan, while the shipowners' cases (among others) remained on the Northern District of Ohio's docket. The Michigan cases were ultimately returned to Ohio, but it was not long before the Judicial Panel for Multidistrict Litigation transferred all asbestos cases, from jurisdictions across the United States, to the Eastern District of Pennsylvania for consolidated pre-trial proceedings.
There, the cases remained static for the next two decades until Judge Robreno began presiding over MARDOC. At this time, the shipowners re-raised their motions to dismiss for lack of personal jurisdiction, which the MDL Court granted; the merchant mariners now appeal.
II
To reverse the lower court's ruling, we must conclude that the MDL Court abused its discretion in determining that the shipowners preserved their personal jurisdiction defense. See Sharp v. Johnson , 669 F.3d 144, 158 (3d Cir. 2012). Such an abuse occurs where the court's "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Id. at 158 n.19 (internal quotations omitted).
The majority concludes "that the District Court's conclusion that there was no waiver was an improper application of law to fact that constitutes an abuse of discretion." Maj. Op. at § III. In reaching this holding, the majority also made a factual conclusion that "the shipowners were fully aware that [filing answers] constituted waiver in the eyes of the plaintiffs and Judge Lambros[ ] and created an expectation of continued litigation on the merits." Maj. Op. at § III(B). However, these conclusions overlook the significant deference afforded to the MDL Court's findings and incorporate arguments that were not raised by the merchant mariners on appeal.[1]
A. The MDL Court Did Not Make Clearly Erroneous Finding of Fact.
Though the majority does not expressly state that the MDL Court made clearly erroneous findings of fact, it reaches different factual conclusions than the MDL Court to find that the shipowners waived their jurisdictional defense. In so doing, the majority applies a less deferential standard than that required. The "clearly erroneous" standard "does not envision an appellate court substituting its findings for that of the district court; rather it allows only an assessment of whether there is enough evidence on record to support such findings, regardless [of] whether different inferences could be drawn." Leeper v. United States , 756 F.2d 300, 308 (3d Cir. 1985) ; see also Agathos v. Starlite Motel , 977 F.2d 1500, 1504 (3d Cir. 1992) (highlighting that a finding of fact is only "clearly erroneous" if the record lacks sufficient evidence to support the court's factual conclusions).
First, the majority holds that the shipowners waived their jurisdiction defense by filing answers; however, those answers included clear and unequivocal statements preserving their jurisdictional defenses in *113 accordance with the Federal Rules of Civil Procedure and our law.
This Court has held that the Federal Rules of Civil Procedure permit "a defendant to answer to the merits in the same pleading in which he raises a jurisdictional defense without waiving the jurisdictional defense." Neifeld v. Steinberg , 438 F.2d 423, 427 (3d Cir. 1971). In Neifeld , defendant filed an answer to plaintiff's claims asserting a lack of personal jurisdiction and-in the same pleading-raising a counterclaim against plaintiff. Id. Plaintiff argued that, by filing a counterclaim, defendant submitted to the jurisdiction of the court. Id . at 425. On appeal, this Court noted that, though the Federal Rules do not explicitly authorize a party to couple a counterclaim and jurisdictional defense without waiving the jurisdictional defense, the language of Rule 12(b) does so implicitly. Id . at 427-28. This Court reasoned that, because Rule 12(b) permits a defendant to raise jurisdictional defenses by motion or answer, prohibiting the defendant from coupling his answer and counterclaim would invalidate the options expressly permitted by the Federal Rules, which the court cannot do. Id . at 428.
Relying on similar reasoning, the Sixth Circuit, reviewing cases from the same MDL Court as here, held that defendants did not waive personal jurisdiction by filing an answer, even in light of MARDOC Order No. 41. Kalama v. Matson Navigation Co. , 875 F.3d 297, 305 (6th Cir. 2017). The Kalama Court reasoned that because the Rules "do not authorize a district court to strip a defendant of its right to assert an affirmative defense in an answer, it was not an abuse of discretion to determine that the ship-owner defendants could seek to preserve their jurisdictional defense at any time." Id. It further concluded that the defendants' preservation of their jurisdictional defense in Master Answer No. 2, the same Master Answer filed by the shipowners here, negated any inference that Judge Lambros' order was an "ultimatum" requiring all answers to be interpreted as a waiver. Id . Accordingly, the Sixth Circuit held that the MDL Court did not abuse its discretion in granting the motion to dismiss.[2] Id. at 308.
The merchant mariners argue, and the majority concludes, that the shipowners waived their jurisdictional defense by filing an answer in light of Judge Lambros' order. That reading, however, does not align with this Court's ruling in Neifeld , where we declined to permit a procedurally proper option-objecting to jurisdiction in the answer itself-to be taken away from a defendant. 438 F.2d at 428. Judge Lambros did not have the authority to order that filing an answer alone constituted waiver, because such an order would violate the Federal Rules.
Second, the majority "conclude[s] that the shipowners unequivocally waived their personal jurisdiction defenses when they filed answers in the Northern District of Ohio" because "Judge Lambros and the parties expressly agreed that the shipowners could demonstrate waiver of the defense by filing an answer." Maj. Op. at § III(B). To support its holding, the majority references Judge Lambros' statement that, "unless of course the parties otherwise announce" their intention to waive jurisdiction, the cases not under the court's jurisdiction "will be transferred." App. at 404. He went on to state that transfers would be effective on January 7 *114 or 8 "unless [the defendants], by announcing to the court in the filing of [their] answers on January 5th," waived jurisdiction[3] . App. at 404.
To reverse the MDL Court's finding that filing an answer did not necessarily amount to a waiver, we must hold that this finding was a "clearly erroneous finding of fact," lacking support in the record. However neither Judge Lambros nor Special Master Martyn stated that a defendant could not both file an answer and preserve its jurisdictional defense. Instead, the court indicated that, to save defendants from having to make separate filings, defendants could inform the court of their desire to consent to its jurisdiction by filing answers. On the other hand, if a defendant did not file an answer, the court stated that it would assume that the party desired for its case to be transferred. These rulings leave room for a third option: to file an answer so that the case would not be automatically transferred, while also maintaining a jurisdictional defense and preserving the issue of dismissal for appellate review.[4]
The language in the shipowners' Master Answer No. 2 unequivocally demonstrates the shipowners' intention to exercise this third option. For instance, the shipowners stated that "[e]ach defendant maintains that the transfers are contrary to law" and has filed a motion to certify the order of transfer for interlocutory appeal. App. at 1133. They further provided that "[b]y filing its answer, defendant specifically does not waive its defense of lack of personal jurisdiction or waive its objections to the propriety of the transfers." App. at 1133-34.
The MDL Court's factual findings were not "clearly erroneous" because the record contains sufficient evidence to support them. See Agathos , 977 F.2d at 1504. First, the district court could not have intended to remove defendants' right to preserve their personal jurisdiction defense when filing an answer because the Federal Rules of Civil Procedure expressly permit this action. Second, the hearing transcripts and the language in the shipowners' answers support the conclusion that filing an answer alone would not waive personal jurisdiction, reflecting the propriety of the MDL Court's factual conclusions.
B. The MDL Court Did Not Make a Misapplication of Law.
The MDL Court correctly noted that a party can waive its personal jurisdiction defense by participating in the litigation and taking advantage of the forum. App. at 51 (citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee , 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ). Applying this law, the majority concludes that the shipowners implicitly waived their jurisdictional defense through both their active participation in the litigation and their dilatoriness (or inactivity). However, we must defer to the MDL Court's factual findings when applying them to the law.
*115 The shipowners did not actively participate in litigation in the Northern District of Ohio. As the merchant mariners note, a party might waive its personal jurisdiction defense where it "actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." Appellants' Br. at 19 (citing In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig. , 15 F.3d 1230, 1236 (3d Cir. 1994) ). In Transmission Corp. , we held that a party waived its personal jurisdiction defense by actively litigating the action, including pursuing counterclaims and moving for summary judgment. Id. Likewise, in Bel-Ray , we held that a party may waive its personal jurisdiction defense if it seeks affirmative relief from the court. Bel-Ray Co. v. Chemrite Ltd. , 181 F.3d 435, 443-44 (3d Cir. 1999). There, defendants actively litigated motions for summary judgment and enjoinment against arbitration, and then, only after the court denied summary judgment, did they file affidavits in support of their personal jurisdiction defense. Id. at 444. Because of this participation, we concluded that defendants submitted themselves to the court's jurisdiction. Id.
The majority concludes that the shipowners continued to actively litigate their cases in the Northern District of Ohio after filing their answers. However, the only activity reflected in the record pertains directly to the issue of jurisdiction and transfer. Participation related to jurisdictional issues does not reflect the merits-based litigation that this Court has required to find implicit waiver. See Transmission Corp. , 15 F.3d at 1236 ; Bel-Ray , 181 F.3d at 443. Unlike the parties in Transmission Corp. and Bel-Ray , the shipowners did not pursue counterclaims, seek summary judgment, move to enjoin, or otherwise actively litigate the merits of the case. Instead, the shipowners' filings and participation reflect the complexity of this matter's jurisdictional issues, which ultimately led to the creation of an MDL.
On the other hand, the majority concludes that the shipowners forfeited their defense to personal jurisdiction because they "fail[ed] to diligently pursue it in the Northern District of Ohio." Maj. Op. at § III(B).[5] However, the record reflects that the case idled; the merchant mariners were not actively prosecuting these cases during this time period; and the shipowners were not delaying litigation or delinquent. See Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund, 29 F.3d 863, 874-75 (3d Cir. 1994) (explaining that dilatoriness can be shown through "extensive or repeated delay or delinquency" or by a plaintiff's years-long failure to prosecute). Once Judge Robreno activated the cases against the shipowners, they filed renewed motions to dismiss for lack of personal jurisdiction and began pursuing the issue now before this Court. The shipowners' behavior reflects diligence, not dilatoriness.
III
The MDL Court rested its factual conclusions in the record and properly applied those facts to the correct legal standard. That its application of the law resulted in a different conclusion than the majority's does not reflect an "abuse of discretion," but the type of fair-minded disagreement upon which our judicial system is premised. Therefore, I respectfully dissent. I *116 would affirm the ruling of the District Court.

Only where the lower court's "error is so 'plain' that manifest injustice would otherwise result" should an appellate court exercise its discretion to consider arguments that were not properly raised in the appellant's opening brief. Gambino v. Morris , 134 F.3d 156, 169 (3d Cir. 1998). There is no evidence to suggest that the lower court committed an error so egregious that a "manifest injustice" would occur if we did not consider these un-argued issues.

The majority distinguishes its holding from Kalama by concluding that our Circuit's precedent demands a different result. However, the decisions cited by the majority are distinguishable from this case because, here, the shipowners did not actively litigate the merits of their cases. Post at § II(B).

A reasonable interpretation of the phrase "by announcing" is that Judge Lambros expected answers to include an express waiver of jurisdiction, if that was the party's desire.

This option may have been particularly important as defendants did not receive notice of the intended transferee courts until December 29, though answers were due January 5. The majority states that the shipowners could have taken their chances with default judgment instead, but this suggestion imposes an unnecessary risk where the shipowners had the option to preserve their defense for appeal, as they did. Cf . Neifeld , 438 F.2d at 429 n.13 (finding no waiver where a defendant asserted a jurisdictional defense alongside a compulsory counterclaim because the party had no alternative but to assert the claim in that filing or waive it).

On appeal, the merchant mariners did not argue that the shipowners forfeited their personal jurisdiction defense due to dilatoriness.