NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

Nos. 15-1387, 15-1388 & 15-1389

————————

IN RE:  ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

Lionel C. Wilson, Deceased by Creighton E. Miller
Administrator of the Estate,

Appellant (No. 15-1387)


Estate of Joseph F. Braun, Creighton E. Miller, Administrator

Appellant (No. 15-1388)


Thomas Guiden, Deceased, by Creighton E. Miller, Administrator

Appellant (No. 15-1389)

————————


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-02-md-00875,
2-11-cv-33880,  2-11-cv-33896 and 2-11-cv-33931)
District Judge: Honorable Eduardo C. Robreno

————————


Argued June 14, 2016

Before: AMBRO, JORDAN, and GREENBERG, <u>Circuit Judges</u>

(Opinion filed: August 18, 2016)

Alan Kellman
Timothy A. Swafford
The Jaques Admiralty Law Firm
645 Griswold Street
1370 Penobscot Building
Detroit, MI   48226

Louis M. Bograd     (Argued)
Motely Rice
3333 K Street, N.W., Suite 450
Washington, DC   20007

       Counsel for Appellants

Harold W. Henderson       (Argued)
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, OH   44114

       Counsel for Appellees

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Nearly three decades ago three former seamen—Lionel Wilson, Joseph Braun, and Thomas Guiden—sued the Matson Navigation Company, Inc. and the American President Line, Ltd. in the United States District Court for the Northern District of Ohio. They alleged violations of the Jones Act, 46 U.S.C. § 30104 *et seq.*, and general maritime law resulting in harmful exposures to asbestos. After a complicated procedural history that eventually saw their lawsuits consolidated in the Asbestos Multidistrict Litigation ("MDL") in the United States District Court for the Eastern District of Pennsylvania, that Court dismissed their cases for lack of personal jurisdiction. Wilson, Braun, and Guiden

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

have appealed, arguing, among other things, that Matson and American waived their personal jurisdiction defenses. We agree and therefore reverse.

## I. Background

Wilson, Braun, and Guiden (like thousands of other seamen) filed lawsuits in Ohio in the late 1980s. Their cases were eventually consolidated in the Northern District of Ohio's Maritime Docket ("MARDOC") before Judge Thomas Lambros. Thompson, Hine, & Flory LLP represented many of the shipowner defendants, including Matson and American. In 1989 attorneys from that firm moved on behalf of Matson and several other defendants (but not American) to dismiss the MARDOC complaints for lack of personal jurisdiction. After two hearings on the issue, Judge Lambros ruled that he lacked personal jurisdiction over many shipowner defendants, including Matson. Rather than dismiss the cases against it, Judge Lambros decided to transfer them to courts where personal jurisdiction was proper. He ultimately "defer[red] putting an order on the transfer of those cases and a finding of want of in personam jurisdiction" so that the plaintiffs could identify to where each case should be transferred and the defendants could decide if they preferred to remain in the Northern District of Ohio by waiving their personal jurisdiction defenses. App. 134.

Two orders followed. The first, MARDOC Order 40, directed the plaintiffs to "report the choice of forum as to those cases which are the subject of the transfer order" and stated that an appropriate transfer order would issue in December 1989. App. 289. It also noted that "[p]arties who, upon reconsideration of their motions to dismiss or transfer, wish to remain in this jurisdiction need only file answers to the complaints" to

3

remain in the Northern District of Ohio. *Id.* The second, MARDOC Order 41, again recognized "the insufficiency of minimal state contacts to invoke in personam jurisdiction" as to some shipowner defendants in Ohio and instructed that the cases against those "defendant shipowners which were determined not to be subject to in personam jurisdiction . . . are transferred." App. 292. The order specified that the Court lacked personal jurisdiction over Matson with respect to the claims of Wilson, Braun, and Guiden, but it made no mention of claims against American.

Matson chose neither to submit to transfer nor to waive its personal jurisdiction defense. Rather it moved to certify MARDOC Orders 40 and 41 for interlocutory appeal to the Sixth Circuit Court and to stay proceedings pending that appeal (Judge Lambros never ruled on those motions) and filed Master Answer No. 1, which raised as an affirmative defense that the "Court lacks personal jurisdiction over this defendant due to insufficient contacts of this defendant" with the forum state. App. 710. Matson and American eventually adopted Master Answer No. 1 as to Wilson, Braun, and Guiden.

Litigation continued in the Northern District of Ohio, and the MARDOC cases were divided into groups of cases known as "clusters" to aid case management. At a hearing in January 1991, the parties discussed the fate of several clusters. At the beginning of the hearing, they talked about how they would proceed with the first cluster of twenty cases, four of which had already been tried to a jury in the Northern District of Ohio. After much discussion, it was resolved that the remaining sixteen cases from the cluster would be tried to that same jury in the Northern District of Ohio, a United States Magistrate Judge would preside over thirteen of the trials, and the remaining three trials

4

would occur before Judge Lambros, who by then had become the Chief Judge of his District.

During the hearing Chief Judge Lambros made clear that he intended to transfer four clusters of cases to the Eastern District of Michigan for pretrial administration and trial. *See* App. 477-78 ("I have just had confirmation that although discussions previously were preliminary that they are asking to pack up the first four clusters . . . to Detroit."). After an intervening discussion about the possibility of settlements and the process for appealing verdicts in the sixteen cases that were set to be tried in the Northern District of Ohio, the conversation returned to the four clusters that were to be transferred to the Eastern District of Michigan. Chief Judge Lambros explained there was at that time a "Michigan cluster" and an "Ohio cluster," each made up of several sub-clusters. App. 518. The former would "be transmitted to" the Eastern District of Michigan, and "the management of those cases will be left to the discretion of the Detroit judges." App. 518-19. As to the Ohio cluster, "pretrial management matters, scheduling matters, [and] discovery matters" would be referred to a Magistrate Judge in the Northern District of Ohio. App. 518.

After a brief discussion about costs, severance, and third-party practice, attorneys from Thompson, Hine, & Flory LLP represented that all of their clients—including Matson and American—"did not agree or concede to trials of any of these cases in Detroit." App. 538. They continued:

> We had put our objection on the record before, but trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here in Cleveland. To go to Detroit is something they don't agree to.

5

*Id.* Counsel for all defendants noted their agreement with that objection.

Notwithstanding that objection, Ohio Asbestos Litigation ("OAL") Order 125 issued the next day. It transferred four clusters of cases—including those of Wilson, Braun, and Guiden—to the Eastern District of Michigan. App. 468. Matson and American promptly asked Chief Judge Lambros to vacate OAL Order 125 so that the cases could "be retained for pretrial management and trial in Cleveland." App. 568. At the same time, they asked the District Court for the Eastern District of Michigan to re-transfer the cases back to the Northern District of Ohio. *See* App. 620-27; *see also* App. 637 (opposing the Report and Recommendation of a Magistrate Judge from the Eastern District of Michigan regarding partial re-transfer and asking the Eastern District of Michigan Court "to re-transfer all Ohio cases to the Northern District of Ohio").

In any event, the Asbestos MDL was created in the Eastern District of Pennsylvania. In March 1991, Matson and American opposed the transfer of the MARDOC cases to the Asbestos MDL and urged the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate the MARDOC cases in the Northern District of Ohio. App. 651. In a filing with the JPML, they wrote, "If transfer is to take place, Shipowner-Defendants request that it be to the Northern District of Ohio. Procedures already are in place for the pretrial management of seamen's asbestos cases, and this is the district in which the largest number of seamen's cases is pending." *Id.* The MARDOC cases were ultimately transferred to the Asbestos MDL, *see In re Asbestos Prods. Liab. Litig.* (No.

6

VI), 771 F. Supp. 415, 417-18 (Jud. Pan. Mult. Lit. 1991), and remained dormant until 2011 when they were activated for pretrial administration.

In July 2014, Matson and American moved in the Eastern District of Pennsylvania to dismiss the cases against them for lack of personal jurisdiction. Judge Robreno granted the motions "for the reasons discussed in" *Bartel v. Various Defendants*, 965 F. Supp. 2d 612 (E.D. Pa. 2013), and *Jacobs v. A-C Prod. Liab. Tr.*, 2014 WL 944227 (E.D. Pa. Mar. 11, 2014), two Asbestos MDL opinions dealing with nearly identical records. App. 5. Applying those opinions to the cases before us, he ruled that Matson and American had preserved their personal jurisdiction defenses because they had raised the issue throughout the litigation and there was no evidence to show that they had waived their defenses as to Wilson, Braun, or Guiden. He explained that the statements in January 1991 that Matson and American did not consent to litigate "these cases" in the Eastern District of Michigan only related to the sixteen cases that were set for trial in the Northern District of Ohio. Moreover, he interpreted Matson's and American's opposition to the consolidation of the MARDOC cases in the Asbestos MDL simply as resistance to the Asbestos MDL, not as affirmative consent to litigate in Ohio. This appeal followed, with all three seamen challenging Judge Robreno's ruling with respect to Matson and only Guiden challenging the ruling with respect to American.

## II.  Standard of Review

We review for abuse of discretion the District Court's determination that Matson and American did not waive their personal jurisdiction defenses. *See Lechoslaw v. Bank of Am., N.A.*, 618 F.3d 49, 55-56 (1st Cir. 2010); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d

7

58, 60 (2d Cir. 1999); *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 882 (Fed. Cir. 1997). A court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Sharp v. Johnson*, 669 F.3d 144, 158 n.19 (3d Cir. 2012) (internal quotations omitted).

### III.  Discussion

Personal jurisdiction "restricts judicial power not as a matter of sovereignty, but as a matter of individual liberty, for due process protects the individual's right to be subject only to lawful power." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (internal quotation marks omitted). "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). A party is deemed to have consented to personal jurisdiction, and thereby waived it as a defense, if that party "actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994); *see Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999).

Judge Robreno ruled that Matson and American preserved their personal jurisdiction defenses. He explained that they raised their defenses in the Northern District of Ohio in the late 1980s, they raised them again when they adopted Master Answer No. 1, and finally they raised them in the Asbestos MDL after the cases were activated in 2011. More importantly, Judge Robreno rejected claims that Matson and American had affirmatively waived their personal jurisdiction defenses. He explained in *Jacobs*—the

8

reasoning of which is at the heart of the appeals before us now—that the statements by their counsel at the January 1991 hearing "involved a group of twenty cases in a trial cluster in Cleveland, Ohio" that did not include the cases of Wilson, Braun, or Guiden. 2014 WL 944227, at *3. According to him, "Defendants had won three of the four cases that had been tried, and had agreed to waive personal jurisdiction in the other sixteen cases remaining in that cluster for strategic, case-specific purposes." *Id.* He thus concluded that Matson and American waived their personal jurisdiction defenses "only in those sixteen specific cases—none of which are before the Court." *Id.* at *5.

Ruling that Matson and American did not waive their personal jurisdiction defenses as to Wilson, Braun, and Guiden at the January 1991 hearing is, we believe, a further stretch than what we believe the facts support. Matson and American consented at that hearing to proceed with "these cases" in the Northern District of Ohio, and that phrase clearly refers to the clusters that Chief Judge Lambros intended to transfer to the Eastern District of Michigan, which included the lawsuits brought by Wilson, Braun, and Guiden. This is apparent for several reasons. First, counsel for Matson and American specifically opposed transfer of "these cases" *to Detroit*, and the earlier mentions of Detroit at the hearing related only to those clusters that Chief Judge Lambros intended to transfer to the Eastern District of Michigan. *See* App. 477-78 (statement by Chief Judge Lambros that he "ha[s] been in very close touch with Chief Judge Julian Cook" of the Eastern District of Michigan, and that the judges of the Eastern District of Michigan "are asking [the Northern District of Ohio Court] to pack up the first four clusters" and to send them "to Detroit"); App. 518-19 (statement by Chief Judge Lambros that the

9

management of the Michigan cluster would "be left to the discretion of the Detroit judges"). It was in reference to those cases that counsel for Matson and American said that they consented to jurisdiction in the Northern District of Ohio. We believe that is a clear waiver of the personal jurisdiction defense in the specific cases before us.

Second, Judge Robreno's interpretation of the hearing transcript—that the waiver was limited to the sixteen cases set for trial in the Northern District of Ohio—is belied by the record. Chief Judge Lambros never suggested that the sixteen cases left over from the first cluster were at risk of being transferred to Michigan. And by the time counsel for Matson and American noted their desire to litigate in Ohio, it was already settled that those sixteen cases were to remain in Cleveland. For example, it had been decided on the record that all sixteen cases would be tried to the same Ohio jury that heard the first four cases from that cluster, with thirteen cases to be tried before an Ohio Magistrate Judge and the remaining three before Chief Judge Lambros himself. Indeed, the parties had already set a trial date in Cleveland for thirteen cases. So even though extended portions of the January 1991 hearing were devoted to a discussion of how to handle those sixteen cases, the waiver of the personal jurisdiction defenses cannot plausibly be understood to have been limited to them. There was no question the sixteen cases would be tried in the Northern District of Ohio, and there is no reason to think that the objection to the transfer of "these cases" to Michigan referred to cases that were not at risk of being transferred.

Third, post-transfer filings by Matson and American confirm that they waived their personal jurisdiction defenses with respect to Wilson, Braun, and Guiden. After the clusters containing their cases were transferred to the Eastern District of Michigan,

10

Matson and American sought to have them transferred back to the Northern District of Ohio. In their filings with the Northern District of Ohio Court, the Eastern District of Michigan Court, and the JPML, they specifically requested that the cases be returned to Ohio. *See* App. 568, 620-27, 637, 651.

Matson and American argue that they sought to be in the Northern District of Ohio not to litigate the merits of the cases against them, but to seek review of Chief Judge Lambros's decision to transfer (rather than dismiss) for lack of personal jurisdiction. But that position contradicts the record, which shows they requested that the cases be sent to Ohio not for reconsideration of a particular ruling but "for *pretrial management and trial* in Cleveland." App. 568 (emphasis added). The conclusion is clear: Matson and American waived their personal jurisdiction defenses and wished to proceed to trial in the Northern District of Ohio.[1]

*   *   *   *   *   *

In summary, by stating their willingness to litigate the lawsuits of Wilson, Braun, and Guiden in the Northern District of Ohio at the hearing before chief Judge Lambros in January 1991, Matson and American waived their lack-of-personal jurisdiction defense. Those waivers were confirmed by their various post-transfer filings. That they purported to preserve their personal jurisdiction defenses in their pleadings does not change the import of these clear waivers. Thus it was incorrect to dismiss the cases before us. We

---

[1] Because of this ruling, we do not reach Appellants' law-of-the-case argument.

11

reverse and remand to the Eastern District of Pennsylvania Court for proceedings

consistent with this opinion.[2]

---

[2] Appellants' Motion to File a Supplemental Appendix is denied because the materials contained in the proposed Supplemental Appendix were not presented to Judge Robreno, and "we will not consider new evidence on appeal absent extraordinary circumstances." *See In re Application of Adan*, 437 F.3d 381, 388 n.3 (3d Cir. 2006).