NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-4148
_____

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI)

JOSEPH E. BLUE; GEORGE A. PERDREAUVILLE,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-11-cv-33914, 2-11-cv-33906, and 2-02-md-00875)
District Judge: Honorable Eduardo C. Robreno

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2017

Before: VANASKIE, RENDELL, and FISHER, *Circuit Judges*

(Filed: December 28, 2017)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

This case has its genesis in the late 1980s when Appellants George Perdreauville

and Joseph Blue filed lawsuits in the United States District Court for the Northern

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

District of Ohio against the Appellees under the Jones Act, 46 U.S.C. § 30104 *et seq.*, and general maritime law, alleging injury from exposure to asbestos while onboard the Appellees' various ships. A lengthy and complex procedural course ensued, and, in 1991, the suits were consolidated in the Asbestos Multidistrict Litigation ("MDL") in the United States District Court for the Eastern District of Pennsylvania. In 2014, that Court dismissed the Appellants' cases due to lack of personal jurisdiction. Perdreauville and Blue subsequently filed this timely joint appeal, arguing, *inter alia*, that the Appellees had waived their personal jurisdiction defenses.

We addressed precisely the same issue in a 2016 decision involving three different MDL plaintiffs. *See In re: Asbestos Prod. Liab. Litig.*, 661 F. App'x 173 (3d Cir. 2016) (the "*Braun*" opinion). There, we agreed with the argument now put forth by the Appellants and reversed the district court on grounds that the *Braun* appellees had waived their personal jurisdiction defenses. Upon review of *Braun* and its application to the facts at issue, we will reverse in the instant case as well.

## I.

Joining several thousand other seamen, Appellants Perdreauville and Blue commenced litigation in the Northern District of Ohio against various shipowner defendants in the late 1980s. Appellants alleged that they had suffered damages after being exposed to asbestos onboard the defendants' vessels. Eventually, the cases were consolidated in the Northern District of Ohio's Maritime Docket ("MARDOC") before Judge Thomas Lambros. These various MARDOC plaintiffs, including Perdreauville and Blue, were represented by one firm—the Jaques Admiralty Law Firm. The vast majority

2

of the MARDOC defendants, including Appellees Delta Steamship Lines, Inc. ("Delta"),

f/k/a Mississippi Shipping Co., Inc. ("Mississippi Shipping"), and Farrell Lines

Incorporated ("Farrell") (together, the "Shipowner Appellees"), were represented by the

firm Thompson, Hine, & Flory LLP.[1]

In 1989, Thompson, Hine, & Flory LLP moved on behalf of the Shipowner

Appellees in the Perdreauville case (though not in the Blue case) to dismiss for lack of

personal jurisdiction. Judge Lambros thereafter held two hearings on the issue and ruled

that the Northern District of Ohio did not have personal jurisdiction over a significant

number of the defendants, including Delta. Rather than dismissing the cases outright,

however, Judge Lambros afforded time so that plaintiffs could indicate "where each case

should be transferred and the defendants could decide if they preferred to remain in the

Northern District of Ohio by waiving their personal jurisdiction defenses." *In re:*

*Asbestos Prod. Liab. Litig.*, 661 F. App'x at 174.

In the months that followed, Judge Lambros issued two orders: MARDOC Order

40 and MARDOC Order 41. The former was issued on November 22, 1989, and directed

the plaintiffs to "report the choice of forum" for each case slated for transfer. (App. 582.)

It further stated that an appropriate transfer order would be issued in December 1989 and

---

[1] Various corporate mergers and name-changes have taken place since the commencement of this case. Delta Steamship Lines, In. ("Delta"), f/k/a Mississippi Shipping Co., Inc., has since merged into Crowley Marine Services, Inc. Farrell Lines Incorporated ("Farrell") is the successor by merger to American Export Lines Inc., f/k/a American Export Isbrandtsen Lines, Inc. *See* Appellees' Br. at 2 n.2.

that "[p]arties who, upon reconsideration of their motions to dismiss or transfer, wish[ed] to remain in this jurisdiction[,] need only file answers to the complaints" in order to remain in the Northern District of Ohio. *Id.*

The latter order, MARDOC Order 41, was filed about a month later and again recognized "the insufficiency of minimal state contacts to invoke in personam jurisdiction" over a number of defendants in Ohio. *Id.* at 585. On that basis, MARDOC Order 41 authorized the transfer of the cases involving those defendants to jurisdictions which, according to the plaintiffs, had "sufficient contact [with the defendants] to sustain . . . in personam jurisdiction . . . ." *Id.* Included among the group of cases to be transferred were those filed by the Appellants. *Id*. at 607–09, 616–17.

The Shipowner Appellees, however, chose neither to submit to transfer nor to waive their personal jurisdiction defense. Instead, Thompson, Hine, & Flory LLP filed on behalf of its clients—including the Shipowner Appellees—Master Answer No. 1, averring as an affirmative defense that the Northern District of Ohio "lack[ed] personal jurisdiction over [each] defendant due to insufficient contacts of [the] defendant with" the forum state. *Id*. at 1207. The Shipowner Appellees subsequently adopted Master Answer No. 1 as to both Perdreauville and Blue. *Id.* at 1224, 1233.

Litigation proceeded in the Northern District of Ohio throughout the remainder of 1990 and, during that time, Judge Lambros divided the various suits into specific "clusters" to aid case management. On January 8, 1991, the parties appeared before Judge Lambros—who by then had become the Chief Judge of his District—to address how the clusters should proceed to trial. Because the statements made at this proceeding

4

proved to be the linchpin of our holding in *Braun*, and, as explained in detail below, the same statements from that January 1991 hearing apply with equal force to this case, it is worth quoting the following passage from *Braun* in full, as it thoroughly recounts the pertinent sequence of events vis-à-vis the issue of personal jurisdiction:

> At the beginning of the hearing, [the parties] talked about how they would proceed with the first cluster of twenty cases, four of which had already been tried to a jury in the Northern District of Ohio. After much discussion, it was resolved that the remaining sixteen cases from [that] cluster would be tried to [the] same jury in the Northern District of Ohio, a United States Magistrate Judge would preside over thirteen of the trials, and the remaining three trials would occur before Judge Lambros . . . .
>
> During the hearing Chief Judge Lambros made clear that he intended to transfer four clusters of cases to the Eastern District of Michigan for pretrial administration and trial . . . . After an intervening discussion about the possibility of settlements and the process for appealing verdicts in the sixteen cases that were set to be tried in the Northern District of Ohio, the conversation returned to the four clusters that were to be transferred to the Eastern District of Michigan. Chief Judge Lambros explained there was at that time a "Michigan cluster" and an "Ohio cluster," each made up of several sub-clusters. App. [702]. The former would "be transmitted to" the Eastern District of Michigan, and "the management of those cases will be left to the discretion of the Detroit judges." App. [702]. As to the Ohio cluster, "pretrial management matters, scheduling matters, [and] discovery matters" would be referred to a Magistrate Judge in the Northern District of Ohio. App. [702].

*In re: Asbestos Prod. Liab. Litig.*, 661 F. App'x at 175.

Following a brief discussion about costs, severance, and third-party practice, counsel from Thompson, Hine, & Flory LLP clarified to the court that the Shipowner

5

Appellees "did not agree or concede to trials of any of these cases in Detroit." (App. 722.) Counsel continued:

> We had put our objection on the record before, but trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here in Cleveland. To go to Detroit is something they don't agree to.

*Id.* Counsel for all of the defendants then confirmed on the record their agreement with that objection.

Notwithstanding the Shipowner Appellees' objection, Chief Judge Lambros issued Ohio Asbestos Litigation ("OAL") Order 125 the next day, transferring four clusters of cases—including the Appellants'—to the United States District Court for the Eastern District of Michigan. The Shipowner Appellees promptly moved to vacate Chief Judge Lambros' Order, asserting that the cases "should be retained for pretrial management and trial in Cleveland." *Id.* at 752. Chief Judge Lambros denied the motion, prompting the Shipowner Appellees to file a similar motion in the Eastern District of Michigan requesting that the cases be returned to the Northern District of Ohio. The Magistrate Judge to whom the motions were referred recommended that the Shipowner Appellees' Motions to Retransfer be held in abeyance, a recommendation that the Shipowner Appellees likewise objected to in a subsequent filing that requested "retransfer [of] all 40 Ohio cases to Ohio for handling . . . ." *Id.* at 820.

Eventually, in 1991, the Asbestos MDL was created in the Eastern District of Pennsylvania. The Shipowner Appellees opposed the transfer of the MARDOC cases to the Asbestos MDL and urged the Judicial Panel on Multidistrict Litigation ("JPML") to

6

consolidate the cases in the Northern District of Ohio. In a filing with the JPML, counsel requested on behalf of the Shipowner Appellees, "[i]f transfer is to take place, . . . that it be to the Northern District of Ohio" because "[p]rocedures already are in place for the pretrial management of seamen's asbestos cases, and this is the district in which the largest number of seamen's cases is pending." *Id.* at 902. Notwithstanding the Shipowner Appellees' objection, the MARDOC cases were transferred to the Asbestos MDL, *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 417–18 (J.P.M.L. 1991), where they sat dormant until 2011 when Judge Robreno reactivated them.

Throughout 2012 to 2014, the Shipowner Appellees filed motions to dismiss based upon lack of personal jurisdiction in the Appellants' cases. In Perdreauville's case, Judge Robreno granted the Shipowner Appellees' motion and dismissed the case via a Memorandum and Order dated March 12, 2014. *See Jacobs v. A–C Prod. Liab. Tr.*, No. 2 MDL 875, 2014 WL 944227 (E.D. Pa. Mar. 11, 2014). On October 10, 2014, Judge Robreno dismissed Blue's case as well, citing both *Jacobs* and *Bartel v. Various Defendants*, 965 F. Supp. 2d 612 (E.D. Pa. 2013) for his reasoning and conclusions. (App. 5.) In *Jacobs* and *Bartel*, Judge Robreno ruled that the defendants "had preserved their personal jurisdiction defenses because they had raised the issue throughout the litigation and there was no evidence to show that they had waived their defenses" as to the relevant plaintiffs. *In re: Asbestos Prod. Liab. Litig.*, 661 F. App'x at 176. Moreover, Judge Robreno interpreted the defendants' "opposition to the consolidation of the MARDOC cases in the Asbestos MDL simply as resistance to the Asbestos MDL, not as affirmative consent to litigate in Ohio." *Id.* Following the dismissal of their cases,

7

Perdreauville and Blue filed this timely joint appeal challenging Judge Robreno's decision to grant the Shipowner Appellees' motions to dismiss for lack of personal jurisdiction.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a trial court's determination as to waiver of personal jurisdiction for abuse of discretion. *In re: Asbestos Prod. Liab. Litig.*, 661 F. App'x at 176–77 (citing *Lechoslaw v. Bank of Am., N.A.*, 618 F.3d 49, 55–56 (1st Cir. 2010); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999); *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 882 (Fed. Cir. 1997)). "A court abuses its discretion when its decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.* (quoting *Sharp v. Johnson*, 669 F.3d 144, 158 n.19 (3d Cir. 2012).

## III.

As both parties acknowledge, we addressed the question of whether the Shipowner Appellees waived their personal jurisdiction defenses in *Braun*.[2] The Shipowner Appellees urge us to depart from *Braun*, contending that the Panel "paid only lip service" to the abuse of discretion standard by failing to "identif[y] how Judge Robreno's findings

---

[2] Indeed, counsel in the instant case also represented the parties in *Braun*. Additionally, the reasoning and conclusions forming the basis of the instant appeal—*i.e.*, the District Court's opinions in *Jacobs v. A–C Prod. Liab. Tr.*, No 2 MDL 875, 2014 WL 944227 (E.D. Pa. Mar. 11, 2014) and *Bartel v. Various Defendants*, 965 F. Supp. 2d 612 (E.D. Pa. 2013)—likewise formed the basis of the appellants' appeal in *Braun*.

of fact were clearly erroneous so as to constitute an abuse of discretion." Appellees' Br. at 31. Moreover, the Shipowner Appellees maintain that *Braun* not only "substitute[ed] its own factual conclusions for those of the MDL court," but further drew "illogical and erroneous" conclusions from those facts. *Id.* at 32. As we explain below, however, *Braun* carefully applied the abuse of discretion standard and clearly articulated the precise reasons as to why the record did not support Judge Robreno's conclusions.

A.

In *Braun*, three plaintiffs appealed Judge Robreno's dismissal of their claims for lack of personal jurisdiction. *See In re: Asbestos Prod. Liab. Litig.*, 661 F. App'x at 174. We reversed and remanded, finding that the defendants had waived their personal jurisdiction defenses at the January 8, 1991, hearing before Chief Judge Lambros. *Id.* at 178–79. Underlying our conclusion were three critical facts that plainly contradicted Judge Robreno's interpretation of the record: First, we explained that waiver occurred when counsel for the *Braun* defendants consented to proceed with "these cases" in the Northern District of Ohio because that statement "clearly refer[red] to the clusters [of cases] that Chief Judge Lambros intended to transfer to the Eastern District of Michigan . . . ." *Id.* at 177. "This is apparent," we indicated, because defense counsel "specifically opposed transfer of 'these cases' *to Detroit*, and the earlier mentions of Detroit at the hearing related only to those clusters that Chief Judge Lambros intended to transfer to the Eastern District of Michigan." *Id.* (emphasis in original).[3] In other words, when counsel

<hr>

[3] To support this interpretation, we cited two statements made by Chief Judge Lambros during the hearing, namely: (1) that he "ha[d] been in very close touch with

9

for the *Braun* defendants acknowledged that they had consented to jurisdiction in the Northern District of Ohio, they did so in reference to the cases that were at risk of being transferred by Chief Judge Lambros to Michigan. We concluded, therefore, that counsel's consent to proceed with litigation in Ohio amounted to "a clear waiver of the personal jurisdiction defense . . . ." *Id*. at 178.

Second, we opined that Judge Robreno's interpretation of the hearing transcript—*i.e.,* his assessment that defense counsel's reference to "these cases" was limited to the sixteen cases set for trial in the Northern District of Ohio—was belied by the record. In fact, Chief Judge Lambros never suggested that the remaining sixteen cases from the first cluster were at risk of being transferred to Michigan; to the contrary, it was decided on the record that all sixteen cases would be tried to the same Ohio jury that heard the first four cases from that cluster. *Id*.

Third, we stated in *Braun* that the defendants' post-transfer filings further confirmed that they had waived their personal jurisdiction defenses because, in those filings, they specifically requested that the cases be transferred from the Eastern District of Michigan and the JPML to Ohio. *Id*. In sum, we concluded in *Braun* that Judge Robreno's decision was "a further stretch than what . . . the facts support," namely: that

Chief Judge Julian Cook" of the Eastern District of Michigan, and that the judges of the Eastern District of Michigan "[were] asking [the Northern District of Ohio Court] to pack up the first four clusters" and to send them "to Detroit" (App. 661–62); and (2) that the management of the Michigan cluster would "be left to the discretion of the Detroit judges." (App. 702.) *See In re: Asbestos Prod. Liab. Litig.*, 661 F. App'x at 177–78.

the shipowner defendants "waived their personal jurisdiction defenses and wished to proceed to trial in the Northern District of Ohio." [4]  *Id*. at 177–78. (footnote omitted).

B.

Upon a review of *Braun*, we find that its reasoning and conclusion bear upon the Appellants' case as well.  For one, the claims brought by Appellants Perdreauville and Blue—like those filed by the *Braun* plaintiffs—were among those at risk of being transferred from Ohio to Michigan in January 1991.  (App. 652–53.)  The Shipowner Appellees, in turn, were represented by the same Thompson, Hine, & Flory LLP attorney who consented at the January 8, 1991, hearing to jurisdiction in the Northern District of Ohio.  As explained above, this acknowledgement was a clear waiver of the Shipowner Appellees' lack of personal jurisdiction defenses.  Taken together, these facts establish that the Shipowner Appellees here—like those in *Braun*—indeed waived their lack of personal jurisdiction defenses with regard to the Appellants' cases.

Second, the Shipowner Appellees' post-transfer filings confirm that they, like their counterparts in *Braun*, equally waived their personal jurisdiction defenses with respect to the Appellants.  As a case in point, the Shipowner Appellees objected to OAL Order 125—which transferred 44 cases, including the Appellants', to the Eastern District of Michigan—by filing a motion to vacate OAL Order 125 and have the cases "retained *for*

---

[4] Our colleagues in the Sixth Circuit reviewed our holding in *Braun* and reached the same conclusion, stating: "The Third Circuit correctly determined that the MDL court clearly erred when it found that the objection to transfer out of the N.D. of Ohio from the January 8, 1991, hearing pertains only to sixteen cases that were not before the MDL court in 2014." *Kalama v. Matson Navigation Co., Inc.*, 875 F.3d 297, 307 n.3 (6th Cir. 2017).

11

*pretrial management and trial* in Cleveland." (App. 752.) (emphasis added). These filings, coupled with the clear waiver outlined above, lead us to conclude that the Shipowner Appellees waived their personal jurisdiction defenses.[5]

IV.

For the reasons set forth above, we vacate the order dismissing Appellants' cases for lack of personal jurisdiction, and remand this matter for further proceedings consistent with this opinion.

---

[5] Because of this ruling, we do not reach Appellants' law-of-the-case argument.