**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3471
_____

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION
(NO. VI)

William D. Schroeder; Creighton E. Miller, Administrator
of The Estate of William D. Schroeder;
Richard G. Williams; Louis Munnier; David C. Peebles,
Administrator of the Estate of Louis Munnier;
Willard E. Bartel, Administrator of the Estate of Louis
Munnier,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court Nos. 2-11-CV-33527, 2-11-CV-32774, 2-11-
CV-33078, 2-02-MD-00875
District Judge: The Honorable Eduardo C. Robreno

Argued December 12, 2018

Before: SMITH, *Chief Judge*, McKEE, and FISHER,
*Circuit Judges*

Alan Kellman
Timothy A. Swafford
Jaques Admiralty Law Firm
645 Griswold Street
1370 Penobscot Building
Detroit, MI  48226

Louis M. Bograd**[ARGUED]**
Motley Rice 401 9th Street, N.W.
Suite 1001
Washington, DC  20004
*Counsel for Appellants*


Harold W. Henderson**[ARGUED]**
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, OH  44114
*Counsel for Appellees*

_____

OPINION
_____

SMITH, *Chief Judge.*

Decades after the filing of maritime asbestos injury cases in the Northern District of Ohio, the District Court for the Eastern District of Pennsylvania—which was by then presiding over a nationwide asbestos products multidistrict litigation (MDL)—dismissed claims against numerous defendants for lack of personal jurisdiction. Unsurprisingly, the MDL Court's opinions regarding personal jurisdiction, which were subsequently applied to thousands of claims, have prompted multiple appeals, including two prior appeals to this Court. Now, for the third time, we address on appeal the MDL Court's personal jurisdiction rulings. Based on the unique history of the three consolidated cases now on appeal, we again conclude that dismissal for lack of personal jurisdiction was inappropriate. We will dismiss in part and reverse in part.

## I.

## A.

In the mid-1980s, merchant mariners filed thousands of lawsuits in the Northern District of Ohio against shipowners,[1] raising claims that the merchant mariners had been injured due to exposure to asbestos onboard ships. Northern District of

---

[1] Many shipowner defendants and multiple defense firms have been involved in this litigation. Unless otherwise indicated, when we describe actions taken by "defendants," "shipowners," and "defense counsel" in this Opinion, we are referring to appellees and their counsel at Thompson Hine LLP (previously Thompson, Hine & Flory).

Ohio Judge Thomas Lambros[2] initially presided over the massive Ohio maritime asbestos docket (MARDOC) prior to the 1991 consolidation of the cases in an MDL in the Eastern District of Pennsylvania.

When they filed in the Northern District of Ohio, the merchant mariners relied on a theory of nationwide personal jurisdiction for maritime cases. In 1989, shipowners filed motions to dismiss for lack of personal jurisdiction, arguing that the nationwide theory of jurisdiction was improper and that they did not have sufficient ties to Ohio to justify the exercise of personal jurisdiction over them. In an oral ruling in October of 1989, Judge Lambros rejected the merchant mariners' theory of jurisdiction and ruled that the Northern District of Ohio lacked personal jurisdiction over a number of the shipowners.[3] Judge Lambros indicated, however, that he would be denying the motion to dismiss and issuing an order transferring the cases instead. Following Judge Lambros's ruling, defense counsel requested additional time to consult with his clients and determine whether the shipowners wanted to accept transfer or waive their personal jurisdiction defenses so that they could remain in the Northern District of Ohio. Counsel suggested that his clients may very well want to waive the defense: "It is conceivable, your Honor, in view of the fact that such motions to dismiss have been denied that some of

---

[2] After over 27 years of distinguished service, Judge Lambros left the federal bench in 1995.

[3] The merchant mariners have since abandoned the nationwide contacts theory and do not appeal the MDL Court's ruling that there was not personal jurisdiction over defendants.

4

those defendants who filed motions will not care to be transferred and they wish to stay here, I don't know. I have to consult with them." App. 291.

The Northern District of Ohio followed up the next month with a hearing to address the shipowners' decisions as to whether they would waive the personal jurisdiction defense. Defense counsel advised Judge Lambros that he did not yet have an answer because his clients wanted to know how Judge Lambros would rule on various issues prior to deciding whether they would consent to jurisdiction. *See, e.g.*, App. 362–63. Defense counsel explained that in his view "a lot of these people will stay once they know that information." App. 364. Counsel for the merchant mariners objected to the shipowners' equivocation:

> And so [defense counsel] Mr. Murphy is saying well, he can't make a decision. And just like the old expression be careful what you ask for; you might get it. That's really what he has here. He says, 'Oh, Judge, we wanted to get out of here.' Then he says, 'Well, we want you to make a few more preliminary rulings before we decide whether we want to go or not.' I say get them out of here.

App. 373; *see also* App. 378. At the conclusion of the November hearing, the Northern District of Ohio directed the shipowners to simply file answers by the answer deadline if they intended to waive the personal jurisdiction objection, and, at the time, defense counsel accepted that procedure:

5

Judge Lambros: "What happens if in the management of these cases if we make the disclosure date the same date as the answer date, but if the position is that they are not leaving, they have to have their answers in on those dates?"

*** 

Defense Counsel: "I see no problem with that, your Honor. Now that we have the information, we know what we have to do, that's no problem."

App. 401–02.[4]

Judge Lambros issued MARDOC Orders No. 40 and 41, on November 22, 1989, and December 29, 1989,

---

[4] *See also* App. 404 (Judge Lambros: "And unless of course the parties otherwise announce by January 5th, that then on January 6th or 7th these cases will be transferred. . . . But January 5th the answers have to be filed, and then we transfer then if those specific defendants don't answer and thus waive by the answer date, then the cases get transferred out."); App. 404–05 (Judge Lambros: "In other words a transfer order goes on and we designate the particular jurisdictions to which it will be transferred, and that order will go into effect January 7th unless by January 5th those particular defendants choose to waive the in personam jurisdiction problem . . . Mr. Murphy: I don't perceive any difficulty. Special Master Martyn: Just for my understanding, so they will answer if they want to stay. [Judge Lambros]: That's right.").

respectively, reiterating the procedure announced at the November hearing and directing shipowners who wished to waive their personal jurisdiction defenses to file answers by January 5, 1990, in order to demonstrate waiver. *See* App. 416 (MARDOC 40: "Parties who, upon reconsideration of their motions to dismiss or transfer, wish to remain in this jurisdiction need only file answers to the complaints in accordance with the deadlines established below."); App. 419 (MARDOC 41: "Shipowner defendants, not subject to this transfer order, shall file answers by January 5, 1990."). MARDOC Order 41 expressly ordered transfer of the cases where there was no personal jurisdiction and identified the jurisdiction to which each case would be transferred. On December 29, 1989, shipowners filed a motion for interlocutory appeal and stay to challenge the Northern District of Ohio's authority to transfer the cases rather than dismissing them.

Before the Northern District of Ohio had ruled on the motion for interlocutory appeal and stay, all shipowners relevant to this consolidated appeal filed answers on January 5, 1990, in compliance with Judge Lambros's deadline. Yet shipowners asserted in those answers that they were filing under protest and continued to assert personal jurisdiction defenses. App. 1131; App. 1133–34; App. 1136. Other defendants did not file answers and were transferred out of the Northern District of Ohio.

After the shipowners filed their answers, the Northern District of Ohio proceeded as if they had waived their personal jurisdiction defenses. MARDOC Order 41, directing transfer of those cases where personal jurisdiction was lacking, was

never effectuated as to these shipowners.[5] Nor did the Northern District of Ohio rule on the motion for interlocutory appeal. Indeed, the cases progressed before Judge Lambros for over a year, with no additional motion practice challenging the Northern District of Ohio's jurisdiction or seeking transfer.[6]

**B.**

In 1991, authority over the maritime asbestos cases was transferred to the asbestos MDL in the Eastern District of Pennsylvania. Defendants opposed transfer to the MDL Court

---

[5] There are indications in the record that other cases, in which an answer was not filed, were actually transferred. *See, e.g.*, App. 465–66 ("As a consequence of this Honorable Court's Order of December 10, 1989, forum non conveniens plagues plaintiffs, for each of the causes of action has been splintered, leaving part of the case here and part elsewhere."); App. 482.

[6] In February 1990, merchant mariners moved for transfer *in toto* of the cases such that they could all be tried in one jurisdiction. Defense counsel for the shipowners relevant to this appeal filed a brief opposing transfer and noting that some shipowners had waived their personal jurisdiction defenses in order to proceed in the Northern District of Ohio. Those waiver statements were not directly tied to any specific shipowner. Similarly, a group of cases was temporarily transferred to Michigan and defense counsel argued for retransfer back to the Northern District of Ohio, arguing in part that those shipowners had waived their personal jurisdiction defenses in Ohio. The cases now on appeal were not part of the Michigan group, as explained *infra*.

8

but did not raise a personal jurisdiction defense in their opposition papers. After the creation of the MDL, the MARDOC cases were stayed. There is no dispute, however, that the shipowners consistently attempted to raise personal jurisdiction defenses in compliance with the MDL timelines.

In 2011, the cases at issue here were reactivated by Judge Robreno, who by then was presiding over the MDL in the Eastern District of Pennsylvania. In 2013 and 2014, the MDL Court issued two memorandum opinions concluding that a number of shipowners were not subject to personal jurisdiction in Ohio and that the shipowners had not waived the defense. The MDL Court explained that the shipowners had preserved the defense by raising lack of personal jurisdiction before the Northern District of Ohio and again before the MDL Court on multiple occasions. Although shipowners filed answers in the Northern District of Ohio—a procedure Judge Lambros had ordered would indicate waiver—the MDL Court concluded that this did not result in waiver because "defendants did not intend to waive the defense." App. 53. The MDL Court noted that "defendants faced a Hobson's choice: they could either have agreed to a transfer of the cases to another jurisdiction (and thus lost the ability to assert cross-claims against manufacturer defendants), or they could have chosen to remain in the Northern District of Ohio and lost the defense of lack of personal jurisdiction." App. 54. Accordingly, the MDL Court held that "[b]y filing answers which clearly identified the defense, while at the same time seeking interlocutory review of Judge Lambros'[s] order, defendants preserved and did not waive the defense." App. 54 (internal citation omitted). The MDL Court subsequently

9

applied its prior memorandum opinions to the three merchant mariners relevant to this appeal and dismissed their claims against the shipowners for lack of personal jurisdiction. Merchant mariners Munnier, Schroeder, and Williams filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1333. We have appellate jurisdiction under 28 U.S.C. § 1291.[7] *See Brown Shoe Co. v. United States*, 370 U.S. 294, 308–09 (1962).

---

[7] The clerk's office *sua sponte* ordered the parties to brief whether the MDL Court's order was a final order such that this Court has jurisdiction to consider the appeal under 28 U.S.C. § 1291. Following a review of the parties' briefs, we have no doubt that the MDL Court's order was an appealable final order. *See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1131 (3d Cir. 1990) ("A district court's decision is final and appealable for purposes of § 1291 only when the decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (internal quotation marks omitted)). While the MDL Court indicated in its judgment that it was transferring the cases to the bankruptcy-only docket for plaintiffs to pursue claims against bankrupt defendants, there was clear "indicia of finality." In addition, the MDL Court elsewhere described the "transfer" to the bankruptcy docket as a "dismissal." *See, e.g.*, *In re Asbestos Prods. Liability Litig.*, No. 2:02-md-875, Dkt. 4961 at 2 (directing plaintiffs to identify whether cases "can be

We must, nonetheless, dismiss Mr. Schroeder's appeal against Marine Transport Lines, Inc., because it is barred by res judicata. After the MDL Court dismissed Mr. Schroeder's claims, but before a final judgment had issued, Mr. Schroeder filed suit in South Carolina state court raising the same claims against Marine Transport Lines. After the state court dismissed similar cases brought by other plaintiffs because they were filed outside of the statute of limitations, Mr. Schroeder, apparently anticipating the state court's ruling, filed a motion to voluntarily dismiss his claims. The state court entered an order dismissing Mr. Schroeder's claims with prejudice.

This Court gives a judgment of a state court the same preclusive effect as would another court of that state. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 141 (3d Cir. 1999). In South Carolina, "[a] dismissal with prejudice acts as an adjudication on the merits and therefore precludes subsequent litigation just as if the action had been tried to a final adjudication." *Laughon v. O'Braitis*, 602 S.E.2d 108, 111 (S.C. Ct. App. 2004). Accordingly, the South Carolina dismissal with prejudice precludes Mr. Schroeder and his estate from pursuing claims against Marine Transport Lines.

marked closed or *dismissed* to the 'bankruptcy only' docket" (emphasis added)); *see also Johnston v. Citizens Bank & Trust Co. of Flippin, Ark.*, 659 F.2d 865, 868 (8th Cir. 1981) (holding that a District Court judgment was a final judgment despite the fact that portions of the case were "transferred" to the Bankruptcy Court because it was clear that those portions of the case had actually been dismissed).

11

We will therefore grant the motion to dismiss Mr. Schroeder's appeal as to Marine Transport Lines.

## III.

We review a District Court's decision as to the waiver of an affirmative defense for abuse of discretion. *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012). "A court abuses its discretion when its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* at 158 n.19 (internal quotation marks omitted). Here, the fundamental facts are not in dispute. Instead, the primary question at issue is whether the defendants' conduct amounted to waiver of the personal jurisdiction defense as a matter of law. We hold that the District Court's conclusion that there was no waiver was an improper application of law to fact that constitutes an abuse of discretion under this Court's precedent.

## A.

Under Federal Rule of Civil Procedure 12(b)(2), defendants have the right to move for dismissal for lack of personal jurisdiction, but that right is not unlimited. Rule 12(h) clarifies that the defense of lack of personal jurisdiction can be waived if a defendant fails to raise it in a timely fashion. Fed. R. Civ. P. 12(h). Precedent of the Supreme Court and this Court further holds that the right to assert a personal jurisdiction defense can be affirmatively and implicitly waived through conduct. *See, e.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents

12

first of all an individual right, it can, like other such rights, be waived."); *Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir. 1969) ("[P]ersonal jurisdiction may be conferred by consent of the parties, expressly or by failure to object." (citing *Petrowski v. Hawkeye Security Ins. Co.*, 350 U.S. 495, 496 (1956))).

Simply put, "[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court" even where a defendant has raised the defense. *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 704–05; *see also Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) ("Asserting a jurisdictional defect in the answer did not preserve the defense in perpetuity." (internal quotation marks omitted)). This aligns with the original purpose of Rule 12, which is to prevent "dilatory tactics" and "to expedite and simplify the pretrial phase of federal litigation" to facilitate adjudication on the merits. 5B C. Wright & A. Miller, *Fed. Prac. and Proc.* § 1342 (3d ed. 2004).

Thus, even where a party has met the technical requirements of Rule 12(h), that is not always sufficient to avoid waiver. *See Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1318 (9th Cir. 1998) ("Rule 12(h)(1) specifies the minimum steps that a party must take in order to preserve a defense."). A party's actions must also be consistent with the spirit of Rule 12 by diligently advancing its procedural objections. *See Yeldell*, 913 F.2d at 539 ("While the Tutts literally complied with Rule 12(h) by including the jurisdictional issue in their answer, they did not comply with the spirit of the rule, which is to expedite and simplify proceedings in the Federal Courts." (internal quotation marks omitted)). As this Court has explained, "a party is deemed to

13

have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994). "In particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) (citing *Adam v. Saenger*, 303 U.S. 59, 67 (1938)).

## B.

Here, there is no dispute that the shipowners timely filed a motion to dismiss for lack of personal jurisdiction in the Northern District of Ohio, in compliance with Rule 12. The question is therefore whether the MDL Court abused its discretion when it concluded that the shipowners had not waived their personal jurisdiction defenses by subsequently consenting to, or acquiescing in, the jurisdiction of the Northern District of Ohio.

This Court has issued two non-precedential opinions in related cases where other merchant mariners appealed the MDL Court's orders dismissing maritime asbestos cases for lack of personal jurisdiction. *See In re: Asbestos Prod. Liab. Litig. (No. VI) (Braun)*, 661 F. App'x 173 (3d Cir. 2016); *In re Asbestos Prod. Liab. Litig. (No. VI) (Blue)*, 721 F. App'x 111 (3d Cir. 2017).[8] In both cases, this Court reversed, concluding

---

[8] These dispositions were not opinions of the full Court and pursuant to I.O.P. 5.7 do not constitute binding precedent.

14

that the shipowners had waived their personal jurisdiction defenses. Those appeals, however, involved cases that had been transferred from the Northern District of Ohio to Michigan, whereas the cases here had not been transferred. The panels relied on express statements by shipowners in the Michigan proceedings that they had waived their personal jurisdiction defenses in Ohio. We decline the merchant mariners' invitation to impute the shipowners' statements in *Braun* and *Blue* to defendants here.[9] There was no express waiver in the three cases before us.

The question, then, becomes whether the MDL Court abused its discretion when it concluded that the shipowners had not implicitly waived their personal jurisdiction defenses through their conduct in the Northern District of Ohio. We conclude that the facts and our precedent support a determination that there was implicit waiver. We hold, therefore, that the MDL Court's contrary ruling was an abuse of discretion.

First, the shipowners themselves introduced the possibility of waiver at the October 1989 hearing by asking for additional time so they could choose whether to assent to transfer or waive their personal jurisdiction objections. Then, at the hearing the following month, the shipowners equivocated as to whether or not they intended to waive the

---

[9] We do note, however, that at the time defense counsel stated in the Michigan cases that the personal jurisdiction defense had previously been waived, nothing had transpired in those cases to indicate waiver apart from the conduct that had also taken place in the cases here.

15

defense, and their counsel requested that Judge Lambros make additional rulings before his clients decided whether to waive jurisdiction. Generally, a party who requests affirmative relief and rulings from a court is considered to have waived the personal jurisdiction defense. *Bel-Ray Co.*, 181 F.3d at 443.

Second, the record is clear that the shipowners objected to transfer, and they stand by that objection on appeal. *See, e.g.*, Appellees' Br. at 39 ("Appellees declined either to waive their defenses or to assent to transfer."). Because Judge Lambros had already denied defendants' motions to dismiss and concluded that personal jurisdiction was absent, the shipowners were left with two options. They could waive their personal jurisdiction defenses and remain in the Northern District of Ohio, or they could submit to transfer to a court where personal jurisdiction existed. By objecting to transfer, the shipowners constructively opted to waive their personal jurisdiction defenses.

Third, we conclude that the shipowners unequivocally waived their personal jurisdiction defenses when they filed answers in the Northern District of Ohio. Generally, filing an answer in which lack of personal jurisdiction is identified as an affirmative defense would not constitute waiver. The circumstances of this case, however, require a different result. Judge Lambros and the parties expressly agreed that the shipowners could demonstrate waiver of the defense by filing an answer no later than January 5, 1990, and that shipowners not subject to personal jurisdiction who did not file an answer would be transferred to a court with personal jurisdiction over them. App. 401–05. Defense counsel indicated an understanding of, and agreement to, this procedure. App. 402,

16

405.  Accordingly, when the shipowners then filed answers in compliance with the agreed-upon procedure, their actions were consistent with waiver, despite the fact that they purported to preserve the personal jurisdiction defense.  Behavior that is consistent with waiver, and which indicates an intent to litigate the case on the merits, is sufficient to constitute waiver, regardless of whether the parties also express an intent to preserve the defense.  *See Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 704–05; *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d at 1236.

Further, to the extent the shipowners believed they had a basis for pursuing an interlocutory appeal regarding the validity of Judge Lambros's order denying dismissal and instead ordering transfer, they had already filed a motion to stay pending resolution of that appeal and could have relied on that motion or, if necessary, filed a petition for writ of mandamus.  They were under no obligation to file answers in order to avoid immediate transfer or otherwise, as they were not bound by the scheduling orders of a court that did not have jurisdiction over them.  *Cf. Ins. Corp. of Ireland*, 456 U.S. at 706 ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").  By filing pleadings responding to substantive allegations in the merchant mariners' complaints—after Judge Lambros had unequivocally ruled that he did not have jurisdiction—the shipowners chose to actively litigate their cases.  The shipowners were fully aware that their conduct constituted waiver in the eyes of plaintiffs and Judge Lambros, and created an expectation of continued litigation on the

17

merits. *See In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d at 1236; *see also Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). We conclude the conduct here constitutes waiver.

Fourth, even if the shipowners had not waived their personal jurisdiction defenses by filing answers or through other conduct consistent with waiver, they subsequently forfeited the defense by failing to diligently pursue it in the Northern District of Ohio. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)). As indicated by the ongoing proceedings, Judge Lambros must have believed that the shipowners had waived the defense because he continued to preside over the cases, despite his prior ruling that the Northern District of Ohio did not have personal jurisdiction, and he did not transfer the cases despite the fact that the defendants were clearly subject to MARDOC Order 41. If the shipowners had not intended to waive their defenses by filing answers and believed that the Northern District of Ohio continued to lack personal jurisdiction over them, they had an obligation to diligently pursue that defense rather than acquiesce in the ongoing Northern District of Ohio proceedings. *See In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d at 1236. The shipowners' failure to do so constituted forfeiture. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 59 (2d Cir. 1999) ("We conclude that Atlas forfeited its defense of lack of personal jurisdiction by participating in

18

extensive pretrial proceedings and forgoing numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer.").

Based on these grounds, it is clear that defendants both waived their personal jurisdiction defenses through their own affirmative conduct in the Northern District of Ohio and forfeited their personal jurisdiction defenses by subsequently failing to pursue them in that Court. It was an abuse of discretion for the MDL Court to conclude otherwise given the proceedings before Judge Lambros and the shipowners' undisputed conduct in the Northern District of Ohio.

Further, the MDL Court abused its discretion by applying incorrect legal standards. First, the MDL Court improperly concluded that the shipowners had preserved the personal jurisdiction defense simply by stating in their answers that they did not intend to waive it. The law is clear that words alone are insufficient to preserve a personal jurisdiction defense where conduct indicates waiver. And defendants can forfeit the defense even through conduct that is involuntary. *See Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 704–05. Although the District Court accurately cited this law, it did not apply it correctly to the facts of this case.

Second, the MDL Court explained that the shipowners faced a "Hobson's choice" in deciding whether to answer and waive personal jurisdiction or agree to transfer, App. 54, and the MDL Court suggested that being forced to make a choice was somehow inappropriate. But defendants always face such a choice when a court lacks personal jurisdiction and rules in favor of transfer rather than dismissal. The shipowners did not

19

have the right to simultaneously maintain their personal jurisdiction defenses in the Northern District of Ohio and avoid transfer to a court with personal jurisdiction over them. To the extent the MDL Court concluded that a defendant should not be required to choose between waiver of the personal jurisdiction defense and transfer, that was legal error.

Based on the MDL Court's application of incorrect legal standards and its improper application of the waiver standard to the factual history of these cases, we will reverse.

**C.**

Notably, the Sixth Circuit has affirmed the MDL Court's order dismissing for lack of personal jurisdiction in an appeal by plaintiffs who share the same procedural history as the parties here. *See Kalama v. Matson Navigation Co.*, 875 F.3d 297 (6th Cir. 2017). Like the MDL Court, the Sixth Circuit concluded that Judge Lambros did not have the authority to institute a procedure whereby filing an answer would constitute waiver of the personal jurisdiction defense. We conclude that the Sixth Circuit's reasoning is not persuasive given both our precedent and what we understand to have transpired in Judge Lambros's courtroom. For that reason, we are constrained not to follow the Sixth Circuit's holdings.

The Sixth Circuit explained that the *Kalama* defendants did not waive their personal jurisdiction defenses by filing answers because Judge Lambros exceeded his authority by declaring that filing an answer would result in waiver:

20

> Because the Federal Rules of Civil Procedure do not authorize a district court to strip a defendant of its right to assert an affirmative defense in an answer, it was not an abuse of discretion to determine that the ship-owner defendants could seek to preserve their personal-jurisdiction defense at that time.

*Id.* at 305. We disagree. While it would ordinarily be appropriate for a defendant to raise a personal jurisdiction defense in an answer and thereby preserve the defense, the procedural history of this case was anything but typical. Prior to the filing of answers, Judge Lambros had already ruled that he did not have personal jurisdiction over the shipowners. They could not continue to participate in the lawsuit and, simply by stating they were not waiving, preserve a defense that had already been ruled upon.

Thus, Judge Lambros did not "strip a defendant of its right to assert an affirmative defense in an answer." Instead, having already ruled that he did not have personal jurisdiction over the shipowners, he ruled that continuing to actively litigate the case by submitting an answer would indicate waiver and an intent to proceed in the Northern District of Ohio. That procedure was an exercise in case management that was entirely within Judge Lambros's discretion. *See United States v. Wecht*, 484 F.3d 194, 217 (3d Cir. 2007); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." (internal quotation marks omitted)).

21

The Sixth Circuit further explained that the MDL Court did not abuse its discretion by concluding that there was no forfeiture because there was no concrete evidence of forfeiture: "On this record and absent concrete evidence that any specific ship-owner defendant had abandoned its personal-jurisdiction defense, it was not a clear error of judgment for the MDL court to reject the MARDOC plaintiffs' forfeiture argument." *Kalama*, 875 F.3d at 307. As discussed above, we agree that there was no express waiver by the defendants here, but our precedent does not require concrete evidence or even an intent to waive or forfeit. Conduct consistent with waiver or forfeiture is enough. *See, e.g.*, *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d at 1236; *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 704–05. Here, the shipowners objected to transfer, requested additional rulings from the Northern District of Ohio, complied with Judge Lambros's procedure for waiving their personal jurisdiction defenses, and continued to participate in the litigation for over a year after Judge Lambros unequivocally ruled that he did not have personal jurisdiction. That conduct establishes both waiver and forfeiture under this Circuit's jurisprudence. Accordingly, we must chart a different course than the Sixth Circuit followed in *Kalama*.

"While we are generally reluctant to create circuit splits, we do so where a compelling basis exists." *Parker v. Montgomery Cty. Corr. Facility/Bus. Office Manager*, 870 F.3d 144, 152 (3d Cir. 2017) (internal quotation marks omitted) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 75 n.7 (3d Cir. 2017)). To the extent our holding today creates a circuit split with the Sixth Circuit, it is compelled by

22

our own precedent. Yet even if we had discretion to depart from this Court's case law and reconcile our ruling with that of the Sixth Circuit, we would still conclude that the compelling interests of promoting adjudication on the merits and permitting the merchant mariners to have their day in court are sufficient to justify a circuit split in this instance. *See, e.g.*, *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962); *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981); *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 721 (3d Cir. 1982) ("[The Rule 12(h) waiver rule] reflects a strong policy against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff in his litigation, namely his service of process on the defendant and his choice of forum for the action.").

**IV.**

For the reasons outlined above, we will grant shipowners' motion to dismiss Mr. Schroeder and his estate's appeal as to Marine Transports Lines, Inc. We will otherwise reverse the MDL Court's judgment and the orders granting the shipowners' motions to dismiss for lack of personal jurisdiction as they pertain to these merchant mariners. While the shipowner defendants did not expressly waive their personal jurisdiction defenses, their conduct in the Northern District of Ohio resulted in both waiver and forfeiture of those defenses. It was, therefore, an abuse of discretion for the MDL Court to dismiss for lack of personal jurisdiction. Barring any additional preliminary matters, these 30-year-old cases should at last proceed to adjudication on the merit.

23

*IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*
No. 17-3471

FISHER, *Circuit Judge*, dissenting**.**

Like buried treasure, the Appellant merchant mariners ask us to dig up court transcripts and interpret the meaning of off-the-cuff dialogue between counsel and the court that occurred more than three decades ago. However, the MDL Court already accomplished this task, and it did so according to the appropriate legal standards and within the bounds of reasonable factual interpretation. Because the record demonstrates that the MDL Court did not abuse its discretion in concluding that the shipowners preserved their personal jurisdiction defense, I would affirm.

I

After determining that the Northern District of Ohio did not have personal jurisdiction over certain defendants, Judge Lambros allowed defense counsel thirty days to consult with their clients regarding whether they would prefer to consent to jurisdiction in Ohio, or have their matter transferred to a court with jurisdiction.

At the hearing that followed, Special Master Martyn, who managed MARDOC, stated that the court would "assume transfer" if defendants' responses were not received by December 1, 1989. App. at 331. Special Master Martyn ordered that, if a party wished to waive jurisdiction, it must so "apprise the Court no later than Friday, December 1st, in writing." App. at 332. Later in the hearing, he reiterated that any defendant wishing to waive jurisdiction must affirmatively do so in writing.

1

When Judge Lambros arrived at the hearing, defense counsel raised concerns about deciding whether to waive jurisdiction without additional information, such as the specific transferee courts and whether the cases would be consolidated. The court acknowledged defendants' interest in answers to these questions, but noted that it could not yet make a ruling. The judge then proposed that "the disclosure date [be] the same date as the answer date, but if the position is that they are not leaving, they have to have their answers in on [January 5, 1990]." App. at 401-02. In response, a representative of defense counsel stated that he "saw no problem with that." App. at 402. To clarify Judge Lambros' position, Special Master Martyn asked, "[S]o they will answer if they want to stay[?] . . . And we will pull their name off the [transfer] list." App. at 405. Judge Lambros confirmed.

The next day, the court issued MARDOC Order No. 40, which required the merchant mariners to list the forum to which each case should be transferred and noted that "[p]arties who, upon reconsideration of their motions to dismiss or transfer, wish to remain in this jurisdiction need only file answers to the complaints." App. at 416. One week before the deadline to file answers, Judge Lambros issued MARDOC Order No. 41, which identified the defendants and cases not in the court's jurisdiction and identified the jurisdictions to which the cases would be transferred.

The shipowners, who were named in MARDOC Order No. 41 and all represented by the same firm, filed answers on January 5. In Master Answer No. 1, they stated as an affirmative defense that "[t]he Court lacks personal jurisdiction due to insufficient contacts . . . ." App. at 1131. Master Answer No. 2 began with a preliminary statement specifically asserting that, by filing the answer, defendants were not waiving their personal jurisdiction defense:

2

In response to defendants' motion to dismiss for lack of personal jurisdiction, the Court has issued MARDOC Order Nos. 40 and 41 which transfer the numerous cases against defendant to multiple jurisdictions, up to and including thirteen separate districts around the nation. Each defendant maintains that the transfers are contrary to law. A motion to certify the order of transfer for interlocutory appeal has been filed on behalf of defendant, and in order to preserve the status quo pending appellate review of such order, defendant files its answer to the complaints as directed by MARDOC Order Nos. 40 and 41 under protest, so that said cases will not be transferred automatically pursuant to MARDOC Order No. 40 prior to completion of appellate review. By filing its answer, defendant specifically does not waive its defense of lack of personal jurisdiction or waive its objections to the propriety of the transfers.

App. at 1133-34.

Over the next year, the court's only actions pertained to transferring cases. For instance, because MARDOC Order No. 41 would transfer the cases all over the United States and splinter cases across jurisdictions due to the numerous defendants in each action, the merchant mariners filed a motion to transfer *in toto*. Defendants, including the shipowners, objected, however, stating in part that:

Several nonresident defendants, although not subject to the personal jurisdiction of this Court, nevertheless agreed to waive their personal jurisdiction defense as the quid pro quo to avoid

3

the expense of litigating these cases in as many as 13 different jurisdictions simultaneously, and to take advantage of the consolidated handling available in [the Northern District of Ohio].

App. at 474-75.

Though defendants' opposition noted that "several nonresident defendants" purposefully waived their personal jurisdiction defense, it did not identify who those defendants were. On appeal, the shipowners maintain that these statements "refer[] solely to nonresident defendants who were *not* clients of Thompson Hine and Flory, and are *not* Appellees here." Appellees' Br. at 17 (emphasis in original). Instead, they explain that these statements refer to defendants represented by other firms who informed the court that they would "just as soon be [in Ohio] as anywhere," filed motions consenting to the court's jurisdiction, and withdrew their motions to dismiss or transfer. *Id.* at 17-18.

The court ultimately denied the merchant mariners' Motion to Transfer *in Toto*. However, Judge Lambros never ruled on defendants' motion to certify interlocutory appeal of Order No. 41, nor did he transfer any cases pursuant to that Order, including those in which the defendants did not file answers. Instead, in January of 1991, the court transferred forty-four cases, not including the shipowners' cases at issue here, to the Eastern District of Michigan, while the shipowners' cases (among others) remained on the Northern District of Ohio's docket. The Michigan cases were ultimately returned to Ohio, but it was not long before the Judicial Panel for Multidistrict Litigation transferred all asbestos cases, from jurisdictions across the United States, to the Eastern District of Pennsylvania for consolidated pre-trial proceedings.

There, the cases remained static for the next two

4

decades until Judge Robreno began presiding over MARDOC. At this time, the shipowners re-raised their motions to dismiss for lack of personal jurisdiction, which the MDL Court granted; the merchant mariners now appeal.

## II

To reverse the lower court's ruling, we must conclude that the MDL Court abused its discretion in determining that the shipowners preserved their personal jurisdiction defense. *See Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012). Such an abuse occurs where the court's "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* at 158 n.19 (internal quotations omitted).

The majority concludes "that the District Court's conclusion that there was no waiver was an improper application of law to fact that constitutes an abuse of discretion." Maj. Op. at § III. In reaching this holding, the majority also made a factual conclusion that "the shipowners were fully aware that [filing answers] constituted waiver in the eyes of the plaintiffs and Judge Lambros[] and created an expectation of continued litigation on the merits." Maj. Op. at § III(B). However, these conclusions overlook the significant deference afforded to the MDL Court's findings and incorporate arguments that were not raised by the merchant mariners on appeal.[1]

---

[1] Only where the lower court's "error is so 'plain' that manifest injustice would otherwise result" should an appellate court exercise its discretion to consider arguments that were not properly raised in the appellant's opening brief. *Gambino v Morris*, 134 F.3d 156, 169 (3d Cir. 1998). There is no evidence to suggest that the lower court committed an error so egregious

A.  The MDL Court Did Not Make Clearly Erroneous
    Finding of Fact.

Though the majority does not expressly state that the MDL Court made clearly erroneous findings of fact, it reaches different factual conclusions than the MDL Court to find that the shipowners waived their jurisdictional defense.  In so doing, the majority applies a less deferential standard than that required.  The "clearly erroneous" standard "does not envision an appellate court substituting its findings for that of the district court; rather it allows only an assessment of whether there is enough evidence on record to support such findings, regardless [of] whether different inferences could be drawn."  *Leeper v. United States*, 756 F.2d 300, 308 (3d Cir. 1985); *see also Agathos v. Starlite Motel*, 977 F.2d 1500, 1504 (3d Cir. 1992) (highlighting that a finding of fact is only "clearly erroneous" if the record lacks sufficient evidence to support the court's factual conclusions).

First, the majority holds that the shipowners waived their jurisdiction defense by filing answers; however, those answers included clear and unequivocal statements preserving their jurisdictional defenses in accordance with the Federal Rules of Civil Procedure and our law.

This Court has held that the Federal Rules of Civil Procedure permit "a defendant to answer to the merits in the same pleading in which he raises a jurisdictional defense without waiving the jurisdictional defense."  *Neifeld v. Steinberg*, 438 F.2d 423, 427 (3d Cir. 1971).  In *Neifeld*, defendant filed an answer to plaintiff's claims asserting a lack of personal jurisdiction and—in the same pleading—raising a

that a "manifest injustice" would occur if we did not consider these un-argued issues.

6

counterclaim against plaintiff. *Id.* Plaintiff argued that, by filing a counterclaim, defendant submitted to the jurisdiction of the court. *Id.* at 425. On appeal, this Court noted that, though the Federal Rules do not explicitly authorize a party to couple a counterclaim and jurisdictional defense without waiving the jurisdictional defense, the language of Rule 12(b) does so implicitly. *Id.* at 427-28. This Court reasoned that, because Rule 12(b) permits a defendant to raise jurisdictional defenses by motion or answer, prohibiting the defendant from coupling his answer and counterclaim would invalidate the options expressly permitted by the Federal Rules, which the court cannot do. *Id.* at 428.

Relying on similar reasoning, the Sixth Circuit, reviewing cases from the same MDL Court as here, held that defendants did not waive personal jurisdiction by filing an answer, even in light of MARDOC Order No. 41. *Kalama v. Matson Navigation Co.*, 875 F.3d 297, 305 (6th Cir. 2017). The *Kalama* Court reasoned that because the Rules "do not authorize a district court to strip a defendant of its right to assert an affirmative defense in an answer, it was not an abuse of discretion to determine that the ship-owner defendants could seek to preserve their jurisdictional defense at any time." *Id.* It further concluded that the defendants' preservation of their jurisdictional defense in Master Answer No. 2, the same Master Answer filed by the shipowners here, negated any inference that Judge Lambros' order was an "ultimatum" requiring all answers to be interpreted as a waiver. *Id.* Accordingly, the Sixth Circuit held that the MDL Court did not

7

abuse its discretion in granting the motion to dismiss.[2] *Id.* at 308.

The merchant mariners argue, and the majority concludes, that the shipowners waived their jurisdictional defense by filing an answer in light of Judge Lambros' order. That reading, however, does not align with this Court's ruling in *Neifeld*, where we declined to permit a procedurally proper option—objecting to jurisdiction in the answer itself—to be taken away from a defendant. 438 F.2d at 428. Judge Lambros did not have the authority to order that filing an answer alone constituted waiver, because such an order would violate the Federal Rules.

Second, the majority "conclude[s] that the shipowners unequivocally waived their personal jurisdiction defenses when they filed answers in the Northern District of Ohio" because "Judge Lambros and the parties expressly agreed that the shipowners could demonstrate waiver of the defense by filing an answer." Maj. Op. at § III(B). To support its holding, the majority references Judge Lambros' statement that, "unless of course the parties otherwise announce" their intention to waive jurisdiction, the cases not under the court's jurisdiction "will be transferred." App. at 404. He went on to state that transfers would be effective on January 7 or 8 "unless [the

---

[2] The majority distinguishes its holding from *Kalama* by concluding that our Circuit's precedent demands a different result. However, the decisions cited by the majority are distinguishable from this case because, here, the shipowners did not actively litigate the merits of their cases. *Post* at § II(B).

8

defendants], by announcing to the court in the filing of [their] answers on January 5th," waived jurisdiction[3]. App. at 404.

To reverse the MDL Court's finding that filing an answer did not necessarily amount to a waiver, we must hold that this finding was a "clearly erroneous finding of fact," lacking support in the record. However neither Judge Lambros nor Special Master Martyn stated that a defendant could not both file an answer and preserve its jurisdictional defense. Instead, the court indicated that, to save defendants from having to make separate filings, defendants could inform the court of their desire to consent to its jurisdiction by filing answers. On the other hand, if a defendant did not file an answer, the court stated that it would assume that the party desired for its case to be transferred. These rulings leave room for a third option: to file an answer so that the case would not be automatically transferred, while also maintaining a jurisdictional defense and preserving the issue of dismissal for appellate review.[4]

---

[3] A reasonable interpretation of the phrase "by announcing" is that Judge Lambros expected answers to include an express waiver of jurisdiction, if that was the party's desire.

[4] This option may have been particularly important as defendants did not receive notice of the intended transferee courts until December 29, though answers were due January 5. The majority states that the shipowners could have taken their chances with default judgment instead, but this suggestion imposes an unnecessary risk where the shipowners had the option to preserve their defense for appeal, as they did. *Cf. Neifeld*, 438 F.3d at 429 n.13 (finding no waiver where a defendant asserted a jurisdictional defense alongside a

The language in the shipowners' Master Answer No. 2 unequivocally demonstrates the shipowners' intention to exercise this third option. For instance, the shipowners stated that "[e]ach defendant maintains that the transfers are contrary to law" and has filed a motion to certify the order of transfer for interlocutory appeal. App. at 1133. They further provided that "[b]y filing its answer, defendant specifically does not waive its defense of lack of personal jurisdiction or waive its objections to the propriety of the transfers." App. at 1133-34.

The MDL Court's factual findings were not "clearly erroneous" because the record contains sufficient evidence to support them. *See Agathos*, 977 F.2d at 1504. First, the district court could not have intended to remove defendants' right to preserve their personal jurisdiction defense when filing an answer because the Federal Rules of Civil Procedure expressly permit this action. Second, the hearing transcripts and the language in the shipowners' answers support the conclusion that filing an answer alone would not waive personal jurisdiction, reflecting the propriety of the MDL Court's factual conclusions.

B. The MDL Court Did Not Make a Misapplication of Law.

The MDL Court correctly noted that a party can waive its personal jurisdiction defense by participating in the litigation and taking advantage of the forum. App. at 51 (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). Applying this law, the majority concludes that the shipowners implicitly waived their jurisdictional defense through both their active participation in

compulsory counterclaim because the party had no alternative but to assert the claim in that filing or waive it).

10

the litigation and their dilatoriness (or inactivity). However, we must defer to the MDL Court's factual findings when applying them to the law.

The shipowners did not actively participate in litigation in the Northern District of Ohio. As the merchant mariners note, a party might waive its personal jurisdiction defense where it "actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." Appellants' Br. at 19 (citing *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994)). In *Transmission Corp.*, we held that a party waived its personal jurisdiction defense by actively litigating the action, including pursuing counterclaims and moving for summary judgment. *Id.* Likewise, in *Bel-Ray*, we held that a party may waive its personal jurisdiction defense if it seeks affirmative relief from the court. *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 443-44 (3d Cir. 1999). There, defendants actively litigated motions for summary judgment and enjoinment against arbitration, and then, only after the court denied summary judgment, did they file affidavits in support of their personal jurisdiction defense. *Id.* at 444. Because of this participation, we concluded that defendants submitted themselves to the court's jurisdiction. *Id.*

The majority concludes that the shipowners continued to actively litigate their cases in the Northern District of Ohio after filing their answers. However, the only activity reflected in the record pertains directly to the issue of jurisdiction and transfer. Participation related to jurisdictional issues does not reflect the merits-based litigation that this Court has required to find implicit waiver. *See Transmission Corp.*, 15 F.3d at 1236; *Bel-Ray*, 181 F.3d at 443. Unlike the parties in *Transmission Corp.* and *Bel-Ray*, the shipowners did not pursue counterclaims, seek summary judgment, move to

11

enjoin, or otherwise actively litigate the merits of the case. Instead, the shipowners' filings and participation reflect the complexity of this matter's jurisdictional issues, which ultimately led to the creation of an MDL.

On the other hand, the majority concludes that the shipowners forfeited their defense to personal jurisdiction because they "fail[ed] to diligently pursue it in the Northern District of Ohio." Maj. Op. at § III(B).[5] However, the record reflects that the case idled; the merchant mariners were not actively prosecuting these cases during this time period; and the shipowners were not delaying litigation or delinquent. *See Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund,* 29 F.3d 863, 874-75 (3d Cir. 1994) (explaining that dilatoriness can be shown through "extensive or repeated delay or delinquency" or by a plaintiff's years-long failure to prosecute). Once Judge Robreno activated the cases against the shipowners, they filed renewed motions to dismiss for lack of personal jurisdiction and began pursuing the issue now before this Court. The shipowners' behavior reflects diligence, not dilatoriness.

## III

The MDL Court rested its factual conclusions in the record and properly applied those facts to the correct legal standard. That its application of the law resulted in a different conclusion than the majority's does not reflect an "abuse of discretion," but the type of fair-minded disagreement upon which our judicial system is premised. Therefore, I respectfully dissent. I would affirm the ruling of the District Court.

---

[5] On appeal, the merchant mariners did not argue that the shipowners forfeited their personal jurisdiction defense due to dilatoriness.

12